[No. 606.   October 16, 1895.]

FRANCIS X. EBERLE, PLAINTIFF IN ERROR, v. WILLIAM CARMICHAEL ET AL., DE-
FENDANTS IN ERROR.

MINING CLAIM—OWNERSHIP OF ADJOINING MINES IN COMMON—SUFFI-
CIENCY OF CLAIM.—When several adjoining mining claims are held in common, work done upon any one of them, in a given year, for the benefit of all, equal in amount to that required to be done upon all, is a sufficient compliance with the mining laws of the United States.

ID.—CLAIM OF PRIOR LOCATION—EJECTMENT—EVIDENCE—JURY TRIAL.—
In ejectment for the recovery of three adjoining mines against persons claiming under a location made prior to a conveyance to plaintiff, where there was evidence of an oral agreement between plaintiff and two others that all mines located in the name of either should be owned by all in common, and three adjoining mines were located, one in the name of each, and an amount of work for the benefit of all was done on one mine, equal to that required by the mining laws to be done on all, and the interest of the others was conveyed to plaintiff, he was entitled to have the question of his ownership submitted to the jury.

Id.—Ownership of Adjoining Mines in Common—Location Notice, Validity of.—Where the names of three persons claiming to hold three adjoining mines in common did not appear on each location notice,—Held: That the legal title was in the locator named for each mine, and the others had such interest with him as constituted a holding in common, under the mining law, to the extent of making work done on one mine for the development of the three satisfy the law, when sufficient in quantity and value.

Error, from a judgment for defendants, to the Fourth Judicial District Court, Socorro County. Reversed; Laughlin, J., dissenting.

The facts are stated in the opinion of the court.

Thomas B. Catron for plaintiff in error.

H. L. Pickett for defendants in error.

Collier, J.—This was an action in ejectment brought on October 26, 1893, by plaintiff against defendants, for the possession of three mines situate in the Cooney mining district, in the county of Socorro, New Mexico, called the Clifton, Lexington, and Andrew Jackson. Defendants pleaded not guilty only,—put in no special plea,—and the court directed, verbally, a verdict for plaintiff for the Clifton Mine, and a verdict for the defendants for the Lexington and Andrew Jackson mines. On that verdict, judgment was entered for plaintiff for the possession of the Clifton Mine, and against the plaintiff as to the Lexington Mine, and as to five sixths of the Andrew Jackson Mine, and in favor of plaintiff for one sixth of the Andrew Jackson Mine, which last was entered on a stipulation of consent of the defendant Adam Hugg. The plaintiff, on the entering of such judgment, made motions for new trial, and in arrest of judgment, both of which were overruled, and he has brought the case into this court by writ of error. The testimony tended to show that an oral agreement was made in the year 1878 or 1879 be-

tween John E. Eberle, for himself, and as agent of F. X. Eberle and Langford Johnson, that said John E. Eberle and Johnson would prospect for, and locate, mines in Arizona and New Mexico, and that all mines located in the name of either should be owned in common by the three; F. X. Eberle to furnish the necessary means to develop and hold said mines under the mining laws of the United States. Subsequent to this agreement the Clifton Mine was located, on May 26, 1879, in the name of Johnson, and on October 3, 1881, the Lexington Mine, in the name of John E. Eberle, and the Andrew Jackson Mine, in the name of the plaintiff, F. X. Eberle. The location notice of the Lexington was recorded in May, 1879, and that of the other two in December, 1881. The three mining claims lie adjacent,—that is to say, the Lexington abuts the Clifton on the north, and the Andrew Jackson abuts the Lexington on the north,—making a continuous vein or lode, extending nearly four thousand five hundred feet in length for the three. On April 5, 1887, Johnson executed an instrument purporting to convey to John E. Eberle his interest in said three claims, reserving one eighth of the proceeds of the sale thereof, which instrument was filed in the county recorder's office on April 20, 1887. John E. Eberle conveyed all his interest in the three claims to F. X. Eberle, the plaintiff, on December 26, 1889; acknowledgment being made before a notary public on January 4, 1890, and the instrument recorded in the county recorder's office on January 9, 1890. There is testimony tending to show that John E. Eberle had, prior to this time, conveyed the same interest to F. X. Eberle, but the instrument of conveyance was lost, without ever having been recorded. The location notice, as recorded, is as follows:

"Notice of Location. Territory of New Mexico, County of Socorro,—ss.: Know all men by these pres-

ents, that John E. Eberle, the undersigned, citizen of the United States, has this 3rd day of October, 1881, claimed, by right of discovery and location, and does hereby claim, by virtue of such right, 1,500 feet, linear and horizontal measurement, in length, and 300 feet in width on each side of the middle of the vein on this lode, vein, ledge, or deposit, along the course of the same, with all its dips, variations, and angles, together with the amount of surface allowed by law. This said lode, vein, ledge, or deposit hereby located and claimed as aforesaid is situated in Cooney mining district, Socorro county, territory of New Mexico, and is bounded and described as follows, to wit: Commencing at monument where notice is posted, and running northerly direction 1,500 feet. Corners all marked as required by law. Situated about 1,500 feet north of Silver creek. Bounded on south by the Clifton Mine; on the north by the Andrew Jackson Mine. The same vein, ledge, or deposit so located is the Lexington Mine, discovered October 3rd, 1881. Located October 3rd, 1881. John E. Eberle, Locator.
        "Witnesses:    L. JOHNSON,
                "J. W. FOSTER,
                        "Lexington Mine.
                "JOHN E. EBERLE, Locator."
The Andrew Jackson location notice is in the same language, with description as follows: "Commencing at the north end center monument of the Lexington Mine, and running 1,500 feet in a northerly direction, to a monument of stone, with all corners marked by substantial monuments of stone, according to law, and is bounded on the south by Lexington Mine, about one half mile south of Mineral creek." The testimony tended to show that on the Clifton Mine, located in 1879, annual work was done on the lode, down to and including the year 1882, and upon each of the other mines for the years 1881 and 1882, and that subsequent

to 1882 work was done every year upon the Clifton, in a tunnel, up to the time of commencing this suit. There was also testimony that down to the time that Johnson conveyed his interest, reserving one eighth in the three mines, the work was done by the means furnished by F. X. Eberle, and the joint labors of the other two and their employees, and that on February, 1889, an employee of John Eberle sank a shaft on the Lexington, to a depth of about twelve feet, at an expense of $10 per foot. There is some evidence tending to show that the purpose of the tunnel upon the Clifton Mine was for the developing and holding of it and the other three claims, and that such work did so tend, and would, in all likelihood, result in such development, if said tunnel were sufficiently extended. The testimony shows that shafts were sunk on the lead in each of the three mines at the time of location. Also, there was testimony tending to show that the defendants were notified, prior to their going upon the mines, that the tunnel on the Clifton was for the purpose of developing the three mines. There was, also, testimony showing a purchase by plaintiff from Adam Hugg, one of the defendants, of his interest in the three mines, and a contract accompanying the purchase, setting forth that the same was made by plaintiff, while expressly disclaiming any acknowledgment of interest in Hugg, but for the purpose of removing a cloud upon plaintiff's title. It was shown, also, that Hugg located, in 1888, the Consolidated Mine, so as to conflict with the Andrew Jackson location.

We deem it unnecessary to comment on the evidence submitted by the plaintiff as to there being an oral agreement between him and John E. Eberle and Langford Johnson for a location and development of mines for the benefit and co-ownership of the three; of work being prosecuted in furtherance of said agreement; and of a tunnel being run on the Clifton Mine,

intended, and reasonably tending, to develop the three mines. The testimony on these points, being uncontradicted, was sufficient to carry plaintiff's case to the jury, if, in law, he had a locus standi. As to this, we will proceed to discuss.

It seemed to appear to the court below that a case had been made out in plaintiff's favor so completely, as to the Clifton Mine, that the jury were instructed that, as to it, they should return a verdict in plaintiff's favor. It is to be observed that, if plaintiff was entitled to recover as to the Clifton Mine, it was not because of the original location being in his name; for, as a matter of fact, it was located in the name of Langford Johnson in 1879, and by subsequent conveyances the title came into plaintiff, it being first conveyed to John E. Eberle, and by him to plaintiff. It also seemed to be the theory of the court below that it was beyond dispute that the tunnel upon the Clifton Mine, whatever might be said about its tending to develop the Lexington and Andrew Jackson Mines, was at least annual work, under the law, on the Clifton, sufficient to render unimpeachable plaintiff's possessory right. We have said that in our opinion the tunnel work on the Clifton should be considered as work done for, and having a tendency toward, development of it and the other two mines, and that the evidence in that regard was sufficient to go to the jury. It is well settled that, when several adjoining claims are held in common, work for the benefit of all, done upon any one of them, in a given year, to an amount equal to that required to be done upon all, meets the requirements of the mining laws of the United States. Smelting Co. v. Kemp, 104 U. S. 636; Jackson v. Roby, 109 U. S. 440; Chambers v. Harrington, 111 U. S. 350.

*Ownership of adjoining mines: in common: sufficiency of claim.*

Let us inquire, then, what is plaintiff's status as to the other mines. We will consider first the case of the

Lexington Mine. This mine was located
CLAIM of prior lo- in 1881 in the individual name of John E.
cation: eject-
ment: evidence: Eberle, who conveyed to the plaintiff, by
jury trial.
deed duly recorded, on January 9, 1890.
The status of that mine, then, seems to be that, if the
parol agreement respecting the location and working
of mines was not effectual to vest an interest in F. X.
Eberle and Johnson, then John E. Eberle had the
entire interest, if any at all, by virtue of the location in
1881, and, if said agreement was so effectual, he was
vested with a two thirds interest subsequent to the
Johnson conveyance, in 1887; and, in either event,
plaintiff acquired by the conveyance of 1890 the entire
interest in the Lexington Mine, the question of that
interest being preserved being hereafter considered.
It also appears that, inasmuch as the Lexington Mine
abuts on the Clifton, the Clifton tunnel could be deemed,
if it and the Clifton were held in common, as tending
to develop the Lexington, even if the Andrew Jackson,
which abuts on the Lexington, should be considered as
the property of strangers. There is some testimony to
the effect that in the spring of 1889 one James House
located ground that conflicted with the Lexington loca-
tion; but it is of so slight and so vague a character that
it should not be considered as militating against plain-
tiff's right to go to the jury, if, as a matter of fact,
plaintiff acquired, by instruments of conveyance, the
prior interest or interests in that mine. If plaintiff had
acquired the entire interest in both the Clifton and
Lexington Mines, then the work subsequent to January,
1890, done on the tunnel, having, as we have said the
testimony tends to show, the purpose and tendency to
develop both, it was work for the two mines held in
common, if they were so held. It is admitted in the
brief for defendants in error that this work was done
continuously every year on the Clifton tunnel. It
appears, therefore, that the court erred—so far, at least,

as the Lexington mine is concerned—in directing a verdict for the defendants, if these mines were held in common. If the House location was in fact made, and made prior to January, 1890, what we hereafter say in this opinion in reference to the Adam Hugg location of the Consolidated Mine, so far as the Andrew Jackson is concerned, will apply to the House location, as conflicting with the Lexington Mine, as well as what we say about the mines being held in common.

The Andrew Jackson Mine occupies a somewhat different status from that of the Lexington, in that it appears by undisputed testimony that in 1888 the Consolidated Mine was located so as to conflict with the Andrew Jackson. It also seems to be true, beyond question, that a valid location could have been initiated at the time by Adam Hugg, unless the Andrew Jackson, Lexington, and Clifton Mines were held in common, first by the two Eberles and Johnson, and subsequently by the two Eberles, and the tunnel work was done, and had the purpose and tendency to devolop the three mines. We being satisfied, as already remarked, that such tunnel work was done, and had such purpose and tendency, or that it sufficiently so appears for the purposes we here have, we are left to consider whether or not the three mines were held in common. The fact that the location was in the name of F. X. Eberle alone can not, in this inquiry, be considered, because it conclusively appears that the annual assessment work upon this mine by him, as sole locator, was not kept up, as required by law, to preserve his rights. It is certainly true, however, that if these mines were held in common, and this tunnel work contributing to the development of the three was done by the co-owners with that purpose, and was continuous, and sufficient in value for the three, the location of the Consolidated Mine was void, so far as it conflicted with the Andrew Jackson. The question then is, were they held in common at

that date, or, rather, does the testimony make out a prima facie case in this regard. In the case of Book v. Justice Mining Co., 58 Fed. Rep. 108, it appears that the defendant was the owner of a patented mining claim, and procured three of its employees to locate in their own names, and at the expense of, and for the benefit of, the defendant, two mining claims contiguous to their patented mine, one of the claims being located in the name of one employee, and the other in the names of two other employees. While these mining claims still remained in the names of the locators, the plaintiff located a claim conflicting with one of them, and soon afterward said employees conveyed to defendant company. Prior to the conflicting location of plaintiff, defendant began the construction of a tunnel for the prospecting and development of the mining claims located by its employees. Title in the mining company was held good. That case seems on all fours with the case at bar, except that the oral agreement here was for the joint benefit of the locators, while in Book v. Justice, supra, it was not for the benefit of the locators themselves, but for defendant. A fortiori, it would seem that the locator could locate for the joint benefit of himself, if he can locate for the benefit of another, who is to bear the expense. Also, it would appear that if it is a holding in common between one and another, for whose benefit and at whose expense the one locates, there is much more reason for saying that there is a holding in common between two for whose joint benefit different locations are made. Yose v. McBrayer, 18 Cal. 582; Montz v. Lavelle, 18 Pac. Rep. (Cal.) 803; Hiboun v. Reeding, 3 Mont. 13; Murley v. Ennis, 2 Colo. 300. It has often been held that an oral agreement for the location of a mine for the benefit of the locator and others is not within the statute of frauds. See cases last cited. The question of thus creating merely an equitable title, and therefore not sufficient to maintain a suit in ejectment,

can not, we think, avail here, if it should avail at all,
for two reasons: One reason is that, so far as the Jackson
Mine is concerned, if the legal title was not, at the time
of the location of the Consolidated Mine, in the two
Eberles, it was in the plaintiff, as locator, who had
preserved his rights by work done for the development
of the claims held in common; and, second, the legal
title, as to both the Lexington and Andrew Jackson
Mines, had been conveyed to plaintiff at the time this
action was begun. Whatever our statute might be
construed to mean, as to location, we think it certainly
true that it can not produce the result that an oral agree-
ment for such location of mines for the joint benefit of
the locator and others does not make a holding in com-
mon of all the mines, which, if contiguous, may be
developed by work begun on one of the mines, or even
off of all of them, if intended for and reasonably con-
tributing thereto, as this would be to override an act
of congress. Such statutes must be construed in sub-
ordination to the laws of congress, as they are more as
regulations under those laws than independent legisla-
tion. In Murley v. Ennis, supra,—a Colorado case,—
it is seen that local statutes have not the effect con-
tended for; the Colorado statutes embracing, as does
ours, mining claims under the head of "Real Estate,"
and real estate being conveyed by deed. So regarding
them, we attach no significance to the requirement of
our statute (Comp. Laws, sec. 1566) that the names of
the locators must be recorded, as they can not modify
congressional legislation as to a holding in common.

The only remaining question we deem it necessary
to notice is as to whether there was a valid location of
the Lexington and Andrew Jackson Mines.
OWNERSHIP of adjoining mines in common: validity of location notice. The only attack made on the validity of
location which appears to be strongly
pressed on this court is that the names of
three persons claiming an interest in each mine lo-
cated should have appeared on each location notice. As

to this, however, it is replied that, in our opinion, the legal title was in the locator named for each mine, but the others had such interest with him as constituted, under the mining laws, a holding in common, to the extent, at least, of making work done for development of the three satisfy the law, if sufficient in quantity and value.    It makes no difference whether the interest of the one other than the locator may be inchoate or equitable.    The statute in reference to co-owners does not, we believe, necessarily mean those who are vested with the legal title.    In holding this, we do not go to the length of the decision in Book v. Justice Mining Company, supra, and follow the principle in the causes we have cited.

Our conclusions, summarized, are as follows:    (1) The location of the Lexington and Andrew Jackson Mines are prima facie valid, and the parol agreement establishing (locations being made in pursuance thereof) a holding in common was sufficiently proven for a jury to pass upon same.    (2) The work in constructing a tunnel beginning on the Clifton Mine was sufficiently shown, as to purpose, tendency, continuity, and value, to make a prima facie case for the jury to consider. (3) There was such a prima facie case made, under the above heads, as would authorize a submission to the jury under proper instructions as to whether the locations upon the Lexington and Andrew Jackson Mines were void or not.    For these reasons it is ordered and adjudged that the ruling of the court below in instructing the jury to return a verdict for the defendants as to said mines was error, and that it be set aside; that said verdict be set aside, and that a new trial be granted to plaintiff in error; and that said court be and is hereby directed to place this cause on the calendar for trial as if it had never been tried.

SMITH, C. J., concurs.    LAUGHLIN, J., dissents.