## GORE v. McBRAYER et als.

A WRITING is not necessary to vest or divest title on taking up a mining claim.
The right of the miner comes from the mere appropriation of the claim made in accordance with the mining rules and customs of the vicinage. The title is in the Government; and the right to mine is by its permission to the appropriator.

The usual mode of taking up mining claims is to put upon the claim a written notice that the party has located it; and this taking up and giving notice may be done by a party personally, or by any one for him, or with his assent or approval; and whenever the appropriation is made by an agent having authority from a principal to make it, the act is complete, and the title vests in the principal, and the agent, by his mere act cannot subsequently divest it.

So, where G., McB. and others verbally agreed to prospect for quartz, and to be equally interested in claims taken up, and McB. discovered a lead or claim and located it by putting up a written notice with G.'s name and others on it, appropriating the lead : Held, that G.'s right attached by these proceedings, and could not be divested by the mere act of McB. in taking down the notice and putting up other notices with other names.

After the notice was put up, G. became a tenant in common of the mine, and not a partner, and could bring an action to vindicate his title against McB. or any one who excluded him or denied his right.

The Statute of Frauds, requiring an instrument in writing to create an interest in land, does not apply to the taking up of mining claims. A mere verbal authority to one man to take up a claim for another is sufficient. No title is divested out of the Government, but a right of entry given under it.

The fact that mining laws and regulations were passed on a different day from that advertised for a meeting of miners, does not invalidate them. Courts will not inquire into the regularity of the modes in which these local legislatures, or primary assemblages, act. They must be the judges of their own proceedings. It is sufficient that the miners agree—whether in public meeting or after due notice—upon their local laws, and that these are recognized as the rules of the vicinage, unless fraud be shown, or other like cause for rejecting the laws.

APPEAL from the Fifth District.

Ejectment for an undivided eleventh part or interest in a quartz lead, known as the " Grizzly " claim.

Sometime previous to the discovery and taking up of the lead by McBrayer, he, with Gore, the respondent, and nine others—who were working a claim called the " Blue Lead," previously discovered by them, and being about one hundred and fifty feet from the " Grizzly " claim—had entered into a verbal agreement that they should prospect for quartz together, and " if anything was discovered, all the company was to have an equal interest in it."

The appellant, McBrayer, who had quit work on the " Blue Lead," alone discovered the claim in question about the fifteenth of October, 1858, and had a notice placed on it containing the names of himself and the respondent, together with nine others, none of the nine being members of the original company.

On the following day, one Wyatt, at the request of McBrayer, tore up the first notice, and placed another on the claim, omitting Gore's name from the notice.

McBrayer discovered the claim alone, and neither the respondent nor any of the original company, except McBrayer, were ever in possession of any portion of it.

McBrayer retained possession of the claim, refused to recognize the respondent as having an interest, and disposed of various interests in the claim to different parties.

On the trial, plaintiff offered in evidence the mining laws of the vicinage, and proved that they were passed at a large meeting of miners, held at Sonora on the twenty-first of August, 1858—though the notice calling the meeting stated the day to be August 25th, 1858.   Defendants objected to the introduction of said laws in evidence on the ground that they were passed two days before the time fixed in the notice.   Overruled, defendants excepting.

Defendants requested the following instructions, the first of which was refused absolutely, and the others refused as stated below :

1. That in order to constitute a copartnership in the taking up and locating of quartz claims, it is necessary there should be a contract in writing.

2. That if a partnership existed, as contended for by plaintiff, the defendant, McBrayer, had the right to withdraw at any time, and that if the jury believe from the evidence that he did so withdraw before the discovery by him of the Grizzly claim, then Gore, the plaintiff, had no interest in said claim by virtue of such copartnership.

The Court refused except with this modification : " That the fact of their being copartners in prospecting, did not make them copartners in the Grizzly claim after they had discovered it; that they then ceased to be partners, and became tenants in common.

3. That a copartner can withdraw from a general copartnership at any time he pleases without assigning any reason therefor, and from the time of such withdrawal he ceases, as between himself and his copartners, to be such partner.

The Court again refused, except with this modification: " That parties holding a quartz claim are not considered as partners in law."

Verdict for plaintiff. Defendants appeal.

*H. P. Barber*, for Appellants.

I. The mining claim sought to be recovered is an interest in lands, and no recovery can be had, since the alleged interest was not created by writing, and a recovery would be in direct conflict with the provisions of the Statute of Frauds. (*McCarron* v. *O' Connell*, 7 Cal. 152 ; *Jenkins* v. *Redding*, 8 Id. 598 ; *McKeon* v. *Bisbee*, 9 Id. 137 ; *Partridge* v. *McKinney*, 10 Id. 181 ; *Clark* v. *McElvy*, 11 Cal. 154 ; *Watts* v. *White*, 13 Cal. 321 ; *Merritt* v. *Judd*, 14 Id. 59 ; 15 Id. 216 ; 20 Ala. 412 ; 1 Chand. 118 ; 1 Morris. 175 ; 12 Ired. 285 ; 8 Barb. 130 ; 1 Moody & M. 96 ; Collier on Miners, 5 ; 16 Ves. 390 ; Id. 8–9 ; *Boyce* v. *Green*, 1 Batty. 616 ; *Hewlins* v. *Shipham*, 5 B. & C. 221 ; *Wood* v. *Leadbitter*, 13 M. & W. 838 ; *Perry* v. *Fitzhone*, 8 Q. B. 757 ; *Burnell* v. *Painter*, 4 Conn. 568 ; *Linscott* v. *McIntyre*, 15 Me. 201 ; *Hess* v. *Fox*, 10 Wend. 436 ; *Clancy* v. *Crane*, 2 Dev. Eq. 363 ; *Smith* v. *Burnham*, 3 Sumner, 460 ; Story on Part. sec. 83 ; Wood's Dig. 106, art. 394.)

The verbal agreement between these parties to locate quartz claims was wholly void for the purpose of creating any interest on

behalf of any of the company.   The discoverer or locator of course obtained an interest, but not by virtue of the agreement.   His interest was the result solely of occupation and possession.

Our statute refers to all "interests in lands," present and future, vested and contingent, and possession even is such an interest within the statute.   (Brown on Statute of Frauds, sec. 231; *Howard* v. *Easton*, 7 John. 205; *Lorrer* v. *Winters*, 7 Cow. 263.)

II.   Assuming that this verbal agreement did not create an "interest in lands," then the answer is conclusive that the present action (ejectment) cannot be supported to enforce any rights plaintiff may possess.

If the right attempted to be created by this verbal agreement were an "incorporeal hereditament," still the same objections would apply.   The agreement creating it must be in writing.   (Brown on Statute of Frauds, sec. 229 *et seq.;* and ejectment could not be maintained to recover it; Adams on Ejectment, 20, ch. 2; Collyer on Mines, 82.)   If it be a mere agreement to share in the profits of a certain adventure, it is equally certain ejectment will not lie—the remedy is by action of account or bill in equity.   If respondent contends appellant has not fulfilled his contract, then his remedy is assumpsit, or bill to enforce specific performance, but certainly not ejectment.   But most probably his only remedy, if any, is through the interference of a Court of Equity, acting on a springing or resulting trust, as suggested by Judge Story in a case depending on somewhat similar facts.   (3 Sum. 460.)   Party must have a legal interest to recover in ejectment.   (*Wright* v. *Douglass*, 3 Barb. 556.)

III.   The admission of the alleged mining laws was erroneous. It was proven that public notice, by advertisement of a meeting called to pass quartz mining laws, was given for the twenty-third of August, and that notwithstanding this notice, an alleged meeting was held under such call on the twenty-first of August, two days previously, at which the alleged laws were passed.   The election or amotion of an officer, a by-law, or any act of similar importance, on any day not expressly set apart for that particular transaction, is illegal and void.   (Angell & Ames on Corp. 453, sec. 2.)

The Court erred in refusing the instructions asked by defendants

38

—particularly in the refusal without the modification, " that parties holding a quartz claim are not considered as partners in law;" this modification, as a legal proposition, is erroneous. Parties may hold a quartz claim as partners, or they may hold it as tenants in common without being copartners. (Collier on Mines, 88–9; *Fereday* v. *Whitwick*, 1 Russ. & M. 45; *Trediven* v. *Bourne*, 6 M. & W. 461.)

*L. Quint*, for Respondent.

I. Conceding that the subject of the action is an interest in land, defendants seek to avoid plaintiff's right of recovery through the Statute of Frauds, which we submit has no application to the facts of this case, or if it has, that all the writing required by the statute was furnished by the defendant McBrayer. .

1st. Admitting, for the sake of the argument, that a written instrument was necessary, we find it in the notice written by McBrayer, and placed upon the claim by him. Can he dispute or question a title which he himself thus creates, and that, too, in accordance with the terms and conditions of a solemn engagement? The notices thus posted operated as a record, and excluded all others from the claim thus located.

Again, suppose I hire a man and send him to prospecting for quartz, or any other mineral, the agreement being verbal, and while in my employ he discovers a rich claim, and puts a notice thereon with my name upon it. To whom does the claim belong?

2d. The posting of the notices as shown, operated as an appropriation of the claim, and it thereby became the property of the parties whose names were appended thereto; and when once their rights attached, they could only be lost by abandonment or forfeiture under some mining law.

3d. The right in a mining claim vests by taking in accordance with local rules. (*McGarrity* v. *Byington*, 12 Cal. 426.) The custom of miners is entitled to great, if not controlling weight. (*Brown* v. '49 *and* '56 *Quartz Mining Co*. 15 Cal. 152.)

II. The appellants complain of the admission of the mining laws, because a notice was given for a meeting on the twenty-third of August, and instead of meeting on that day, the miners chose to

Gore *v.* McBrayer.

meet and enact their laws on the twenty-first.    If they had given no notice whatever, but had met by common consent (as seems to have been done in this case) and passed laws, they would have been valid.

III.    The exceptions to the charges of the Court all fall with the appellants' first proposition.    If the parties were tenants in common, (and we admit they were) the instructions were clearly improper, even with the modifications, but with the modifications, they were all given without any grounds of complaint or error.

BALDWIN, J. delivered the opinion of the Court—FIELD, C. J. and COPE, J. concurring.

Ejectment for a mining claim.—Conceding, for the purposes of the decision, that a partnership for the purchase of mining claims is a partnership for dealing in land, and that the agreement must be in writing, within the Statute of Frauds, in order to entitle the several partners to any interest or share in the land purchased by one, still it seems to us that the appellants cannot avail themselves of this principle to defeat the plaintiff's action.

It appears that the plaintiff, Gore, and defendant McBrayer and others, verbally agreed to prospect for quartz, and to be equally interested in claims taken up, and that McBrayer discovered this lead or claim, and located it by putting up a written notice with plaintiff's name and others on it, and thus making claim to the lead.    This process seems to be the usual mode recognized among miners to indicate the taking up of a claim of this sort—as, in fact, an appropriation or proof of appropriation of the claim.    As the title comes from appropriation made in accordance with the mining rules and customs, and as it is not necessary that a party should personally act in taking up a claim, or in doing the acts required to give evidence of the appropriation, or to perfect the appropriation, it would seem that such acts as this are valid to give title to the claimant, if done by any one for him or with his assent or approval.    Indeed, we suppose that the assent would be presumed when the name of a party is used in taking up a claim, or what is the same thing, inserted in a notice which is the external manifestation of the purpose to appropriate—upon the principle.

that a party is presumed to assent to a deed or other act plainly for his benefit. Any recognition of the authority of the person acting for such claimant, or adoption of the act evidenced by the notice or claim, would be sufficient to give it validity—certainly, if nothing had intervened between the notice and the adoption or recognition to alter the relations of the parties to the claim. But it is enough to say, that in this case the agreement operated as the authority from Gore to McBrayer to take up this claim or any other, and to use his (Gore's) name for that purpose. It is as if Gore had made McBrayer his agent to take up the claim for him and in his name; and, upon the performance of the act, Gore's title, so to speak, vested, and he was the owner, subject to the rules of the vicinage, of the claim, or his share of it. We do not see what the statute of frauds has to do with such a case. The title to the land is in the United States; the right to mine and to use and hold possession of the claim inures by a sort of passive concession of the Government to the discoverer or appropriator. No writing is necessary to give the miner a title; but whatever right he has originally comes from the mere parol fact of appropriation, unless indeed, the rules or the customs prevailing in the vicinage, or recognized among miners, make a written notice necessary, and unless, further, this notice be a writing within the meaning of the rule applicable to real estate titles. If this be so, then the plaintiff would have the required written evidence of title—his name having, with his consent, been inserted in the notice. However this may be, we consider that all that the plaintiff was required to do to give him all the right to be derived from an appropriation of this claim, was to authorize it to be taken in his name, and then the consequent act of the defendant in making the claim in plaintiff's name and for his use in the notice perfected his right. The right of Gore having attached in this way, his claim was like any other fixed right, and could not be divested by the mere act of the agent or associate McBrayer, in taking down the notice and putting up other notices with other names. (See *McGarrity* v. *Byington et al.*, 12 Cal. 426, for the principle of this case.)

2. There is nothing in the point that the mining laws offered in evidence were passed on a different day from that advertised for a

Gore *v.* McBrayer.

meeting of miners.    We cannot inquire into the regularity of the
modes in which these local legislatures or primary assemblages act.
They must be the judges of their own proceedings.    It is enough
that the miners agree—whether in public meeting or after due
notice—upon their local laws, and that these are recognized as the
rules of the vicinage, unless some fraud be shown, or some other
like cause for rejecting the laws.    It is not necessary to consider
the other points.    The instructions asked were abstract, in the
view we have taken of the case.    After the notice containing the
name of Gore, he became a tenant in common of the mine, and
might bring this action to vindicate his title against any one who
excluded him and denied his right.    We think the circumstances
do not make out a partnership, but only a tenancy in common.

Judgment affirmed.

Upon a petition for rehearing, the opinion of the Court, per the
same Justices, was as follows :

Petition for rehearing.

The error of the ingenious argument of the appellant's counsel
has been exposed in the opinion reviewed by the petition.    It is
in supposing that a writing is necessary to vest or divest a title on
taking up a mining claim.    The title is in the Government ; if a
written contract is needed to divest it, the Government would have
to execute it.    But, subsidiary to the Government's paramount title
is the permissive claim of the locator.    This comes from a mere parol
fact, evidenced in the present case by a notice ; this notice is a mere
advertisement of this parol fact.    A verbal authority is sufficient
to authorize an agent to make the entry, or to get up the notice.
No title is divested out of the Government by this process, but a right
of entry given under the Government.    When acting for himself, or
for any other who authorized the act, these acts confer this per-
missive title to the public mineral land, and the statute of frauds
has no application to this class of cases.    It is not a mode of vest-
ing, or transferring title from the owner of the fee or holder of the
title, but a mere mode of showing that the locator has availed him-
self of the Government's concession of the privilege of occupying
and using the ground.    This right may be exercised through an

agent or servant; whenever the appropriation is made by an agent having authority from a principal to make it, the act is complete and title vests in the principal, and the agent, by his mere act, cannot subsequently divest it. If the local law were that any man might take up a mining claim by advertising the fact in a newspaper, and A agreed to take up a claim for B, and did advertise the claim in the paper, we apprehend he could not afterwards be heard to say he had no written authority, for if allowed to dispute his own act, the answer would be that it required no written instrument to impart authority to make the advertisement in the name, or even to use the signature of the principal.

Rehearing denied.