## MURLEY *v.* ENNIS.

EVIDENCE — *effect of admissions.* A defendant's admission of a fact is not conclusive upon him, but it is to be weighed by the jury in connection with all other evidence in the case.

PLEADING AND EVIDENCE — *must correspond.* If the plaintiff has not declared for money paid to the use of defendant he cannot have judgment therefor.

STATUTE OF FRAUDS — *agreement to locate lode claims.* An agreement between two or more persons to explore the public domain and discover and locate lodes for the joint benefit of all is not within the statue of frauds (R. S. 337), and it is not necessary that it should be written.

LODE CLAIMS — *may be located by an agent.* Any citizen who is entitled to locate a lode on the public domain may perform all necessary acts of appropriation and development through the agency of others.

*Lode claims — time allowed to perfect location.* Upon discovering a lode the locator is entitled to a reasonable length of time in which to perfect the development which the local law requires of him.[*]

*Nature of inchoate right pending development of claim.* While holding possession for the purpose of making the development required by law, the locator's right to the lode is complete and it cannot be conveyed except by deed.

It may nevertheless be lost by abandonment or by voluntarily yielding the possession to another, which is the same thing.

And so if the locator admit another to the possession with him, this will amount to an abandonment *pro tanto* and a retaking by the party admitted upon which they will become interested in the lode, jointly or otherwise, according to the terms of their agreement.

In these particulars the rule is the same when applied to the relocation of an abandoned claim.

ASSUMPSIT — *for money received on sale of lode.* If one who is in possession of a lode holding for himself and another make sale of the property, the latter may bring ejectment against the purchaser for his part or he may affirm the sale and sue his associate in assumpsit for his part of the purchase-money.

---

[*] By the act of 1874 (10 Sess. 187), the discoverer is allowed sixty days in which to sink a discovery shaft.

CONTRACT — *may be abandoned because of failure to perform condition.* If two persons agree with a third to furnish necessary supplies to the latter as the same shall be required, for discovering and locating lodes for the joint benefit of all, the latter may treat this as a condition precedent, and upon failure to furnish the supplies, he may abandon the enterprise, or he may proceed to discover and locate lodes in his own right, without regard to the contract.

*Error to Probate Court, Clear Creek County.* *

THE declaration contained the common counts for goods sold and delivered ; for work done and materials furnished ; for money loaned ; for money received by defendant for use of plaintiff ; for interest ; for money found to be due upon an account stated.   There was no count for money paid to the use of defendant.   At the trial, Ennis, the present defendant in error, who was then plaintiff, gave evidence tending to prove an agreement between Murley, the plaintiff in error, one Thompson and himself, by which Murley was to prospect for lodes, and the others were to furnish provisions and other supplies to him ; that, under this arrangement, Murley took possession of the St. Joe lode, which had been previously located and abandoned by other parties ; that, by the terms of their agreement, each was to have one-third of all locations made by Murley ; that Ennis and Thompson furnished to Murley about $200 worth of provisions under this arrangement ; that Murley afterward sold and conveyed the St. Joe lode to one McAfee and received therefor about $960 ; that Murley afterward promised to pay plaintiff one-third of the money so received from McAfee, and gave to plaintiff an order on McAfee for $310, being a portion of the said purchase-money ; that this order was returned to Murley with the request that he would collect the same. The plaintiff gave further evidence to show that in the year 1868, at Murley's request, he paid to one Morgan the sum of $70.   The defendant gave evidence controverting that offered by the plaintiff, which it is unnecessary to repeat. The court charged the jury as follows :

* Morley v. Thompson, presenting the like facts and rulings of the court, was reversed for the same reasons.

1. If the jury believe, from the evidence, that Murley did have an accounting with Ennis, and give him an order for the amount as due on the sale of the St. Joe lode, and such order not paid, he is now estopped from denying his liability to Ennis, unless by subsequent payment.

2. This is a civil suit; therefore, the jury will be governed by the weight or preponderance of evidence in determining whether or not the defendant is indebted to the plaintiff.

3. "If the jury believe, from the evidence, that, at the time the alleged contract for prospecting was made, Murley was in possession of St. Joe lode, and that this St. Joe lode was not included in that arrangement, then the jury should find for the defendant. But admissions of the defendant, as to any portion of the sale money belonging to the plaintiff, is good evidence to prove that the lode was included in the alleged contract."

4. "The court instructs the jury that a contract broken, releases the other party from its terms ; and if they believe that the plaintiff and defendant did enter into some kind of a contract or arrangement for prospecting or working any mining property, and that the plaintiff did not carry out his portion of said contract, then the defendant is released from the operations of any such contract, but if afterward there was a settlement and accounting between the parties, and settlement made as to the matters relating to such contract, and the defendant acknowledged his indebtedness to the plaintiff, then the defendant is bound by such accounting and such agreement.

5. "The court instructs the jury that a contract between the plaintiff and defendant to prospect in partnership, for mines, gives the plaintiff no right to or interest in mines previously discovered and owned by defendant, unless afterward, or at the time the contract was made, such mines were included in such contract."

6. "If the jury believe, from the evidence, that in the spring of 1867 the defendant and plaintiff entered into an arrangement for prospecting, and were to share in the proceeds, this gives the plaintiff no right to or interest in prop-

erty subsequently found by defendant, unless he, the plaintiff, carried out his part of the agreement."

7. "If the jury believe, from the evidence, that the defendant is indebted to the plaintiff fo money on account of sale of St. Joe lode, then the plaintiff is entitled to interest at ten per cent per annum from the date of settlement about the matter with plaintiff to the present date."

8. "If the jury believe, from the evidence, that Murley is indebted to Ennis for money paid to Morgan, as attorney, then Ennis is entitled to interest on the same from the time the money was paid, to this date, at ten per cent per annum."

To the giving of which said instructions (except the 6th), by the court, and to the giving of each of them, the defendant then and there excepted.

The jury found for the plaintiff, and judgment was given on the verdict.

Mr. HUGH BUTLER, for plaintiff in error.

Messrs. POST & COULTER, for defendant in error.

WELLS, J. We are of opinion that the supposed accounting and promise to pay referred to in the first instruction, which was given, amounted to no more than an admission of liability, and was entitled to only such consideration as the jury might see fit to accord to it in view of the other testimony. If, in truth, Ennis had no interest in the proceeds of the lode in question, then the alleged promise was without consideration and void, but by this instruction the jury are required to give it conclusive effect ; the fourth asserts substantially the same proposition. The eighth authorizes the jury to allow, in the computation of plaintiff's damages, interest upon a sum of money said to have been paid plaintiff to defendant's use ; the declaration contained no allegation under which even the principal sum so paid could be recovered. Other points in the charge of the court are perhaps liable to exception, but for the error mentioned the judgment must be reversed.

Inasmuch as the cause must be tried again, it will be best that, for the guidance of the lower court, we express ourselves upon the substantial questions which were agitated upon the former trial.

If two or more go into the public domain together to search and explore for mines, with the agreement to occupy and develop such discoveries as may be made for the joint benefit, and such discovery, development and joint occupation follow, it is clear that while each explorer becomes invested with his due share and estate in the premises, no provision of the statute of frauds is violated. The 8th section, which was relied upon in argument, applies strictly to contracts of sale. But, in the case supposed, neither of the parties has, at the date of the association, any interest or estate which can be the subject of sale, and the contract of association does not contemplate that either shall part with any. Nor does the interest or estate which is afterward acquired, vest or inure by virtue of the agreement, but by the occupation and appropriation alone. The terms of the association may, it is true, be referred to, to ascertain the respective rights and interests of the occupants when controversy arises as to these, but this does not at all impair the force of the last proposition. Each associate is the agent of all the others, and every act done by either about the joint adventure is the act of all. In such case, as in the case of partnership transactions, the effect of the contract of association is simply to fix the terms of the agency and to determine how far each may be said to act for himself, and how far for his co-adventurers. Such contract of association is merely the creation of an agency in each of those contracting, and is no more a violation of law than a contract of partnership or association in any lawful calling. The contract of association is equally valid, although, by the terms thereof, one of the associates is to conduct the exploration and perform the work of development, while the others provide and furnish the supplies necessary. Any citizen entitled to avail himself of the privileges conferred by the acts of congress in this behalf may well

appoint an agent to do for him all that he might do in his own person. The act of appropriating and developing the mineral deposits of the public domain may as well be performed by another as by the appropriator in his own person. *Gove* v. *McBrayer*, 18 Cal. 583.

But if one acting for himself alone discovers in the public domain a mineral deposit, such as mentioned in the acts of congress, he, by virtue of his discovery, merely becomes entitled to a reasonable length of time in which to perfect the development which the local law requires of him; and in the meantime he must be permitted to retain the possession of the premises without interference. His right while he proceeds with the work of development is as absolute as after the development is completed.

The same is true where one enters upon a mine previously discovered, and to which the discoverer has lost his right by failing to make the development required by the law; from the moment of commencing the labor of development with the *bona fide* purpose to complete it, and so appropriate the mine, the party has a possession in fact, and for the time being a right to retain that possession. And this right is, perhaps, such an interest in land as cannot be contracted for or disposed of without writing. Brown on Stat. of Frauds, § 231. Nevertheless, it may be lost by an abandonment, as all must agree; for the right, while absolute in the present, exists as to the future only upon condition that the occupant shall perfect the improvement which the law requires, proceeding with reasonable diligence therein; so that if he desert the premises, though but for a moment, with intent not to resume his labors, his right is gone. So if without writing he yield up the possession to another, the right, which before was in him, passes to his successor in possession; or rather the right of the first occupant is gone by abandonment; and by virtue of his occupancy a new right has arisen in him who succeeds. And so, if the first occupant, while his right is still incipient, admit another into possession with him, upon the agreement that the labor of development shall be performed by the two for their common ben-

efit, this amounts to an abandonment *pro tanto*, and if the development be afterward perfected by their joint labors, the better right, which is thereby acquired, inures to the two jointly. The case is not different where the first occupant, pending the labor of development, agrees for a consideration to proceed therewith for himself and another jointly, for such undertaking amounts to an abandonment as to such interest in the premises as he agrees shall inure to that other, and creates an agency, also, whereby every blow thereafter stricken is the act both of him and of his asso· ciate. The law will not permit him to put off the agency which, for a valuable consideration, he has assumed. From the moment of entering into such an agreement his occupancy is not only his but another's also ; and the right given thereby is given to both. And if one so occupying for himself and another afterward avail himself of his sole possession to turn the estate into money, his associate may either bring ejectment against the purchaser for his interest and share in the realty, or may at his election affirm what has been done, and treat the money, or so much thereof as may be proportionate to his interest in the premises, as money received to his use, in which case, even without any express promise, assumpsit will lie therefor. But here there was evidence of an express promise, which certainly rests upon sufficient consideration. The defendant below gave evidence tending to show an omission by plaintiff and Thompson to provide the supplies for which, by the terms of the contract, they had become bound. As to this phase of the case, the rights of the parties would seem to depend upon the following considerations: If, by the understanding of the parties, Ennis and Thompson were to provide all supplies necessary to the prosecution of the work of development upon the lode, as the same might from time to time be required, then performance upon their part was a condition precedent to the obligation of Murley to perform; and their failure would, it would seem, authorize him to treat the whole adventure as abandoned. He might then lawfully desert

the work and proceed about his other affairs; or, inasmuch as the default of Ennis and Thompson could not have the effect to compel him to abandon his right in the premises, he might, with equal propriety, proceed with and perfect the development of the lode upon his own account.    And if he did so, plaintiff cannot be heard to insist upon any benefit under the contract, which he himself had voluntarily abandoned.    Whether plaintiff might lawfully claim in such case to be remunerated for what supplies were furnished under the contract, it will probably not be necessary to inquire, inasmuch as all the evidence tending to show a default on the part of the plaintiff, tends also to show that the defendant, before this action, had repaid all advances made, and the jury will probably accept or reject it in whole. What has been said seems to be a sufficient expression of the views of this court upon all the questions likely to arise in the second trial.

The judgment is reversed, and the cause remanded.

*Reversed.*