CASCADEN v. DUNBAR et al.

(Third Division.  Fairbanks.  1905.)

No. 165.

1. FRAUDS, STATUTE OF—MINES AND MINERALS—CONVEYANCES—DEEDS.

As a general rule (to which there are exceptions), an oral agreement to convey a mining claim or of an interest therein, or to charge or incumber it, is void; it must be conveyed by deed.

[Ed. Note.—For cases in point, see vol. 23, Cent. Dig. Frauds, Statute of, §§ 84, 97, 113, 121.]

2. SAME—GRUBSTAKE CONTRACT.

A grubstake contract is an agreement between two or more persons to thereafter locate mines upon the public domain by their joint aid, effort, labor, or expense, whereby each is to acquire, by virtue of the act of location, such an interest in the mine as is agreed on in the contract. The title accrues to each as an original locator, though the location be made in the name of one or more of the parties only. Each party to the grubstake contract not named in the location notice becomes, nevertheless, an equitable owner and tenant in common with those named. A grubstake contract, though oral, is not within the statute of frauds.

[Ed. Note.—For cases in point, see vol. 23, Cent. Dig. Frauds, Statute of, § 131.]

3. SPECIFIC PERFORMANCE—STATUTE OF FRAUDS—ORAL CONTRACT—INTEREST IN MINE.

If one gratuitously stakes a mining claim for and in the name of another, he cannot enforce specific performance of an oral

promise made by the principal that he will after he, acquires title by location convey an interest in the claim to him in consideration for his services in locating the mine, because such oral promise is within the statute of frauds and void.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Specific Performance, §§ 115, 117.]

On or about the 30th day of November, 1902, the plaintiff, Cascaden, was a resident of Fairbanks, Alaska, and a prospector and miner by occupation. On that day, being about to start on a prospecting trip to the creeks for himself and at his own expense, he agreed with the defendant Bennett that, in addition to the claims which he would locate for himself, he would stake for the defendants, Bennett, Scott, and Dunbar, who were then general partners, and then engaged in freighting, and immediately thereafter in locating, acquiring, and working placer mines in that vicinity.

The contract between Cascaden and Bennett is stated in the second paragraph of plaintiff's second amended complaint as follows:

"The terms and conditions of which were that the plaintiff was at his own expense to proceed to search for, prospect, and stake certain placer mining claims, and that, in addition to the claims staked for himself and in his name and for his sole use and benefit, he was to stake for and on the account and in the name of the said defendants, or either of them, certain placer mining claims, in consideration of which the said defendants promised, agreed, and covenanted with the plaintiff that they would forthwith after such staking fulfill the other requirements exacted by the rules and regulations governing the location of placer mining claims on vacant public land, and more particularly record said locations, and give to the plaintiff a share and interest of one-half in all such locations so made by him for them."

The proof in support of this allegation is fairly stated by Cascaden in his testimony:

"I was going out the latter part of November to do some staking for myself, and Bennett asked me to stake claims for him and his partners in their names, and they would give me a half interest in

all ground I would stake in their names, and that they would record the ground, and together we would prospect and work the ground."

Bennett's version is in these words:

"He says he was going out to stake, and he took my name and Mr. Dunbar's name and Mr. Scott's name, and he says, 'If I see anything out there, I will stake for you', and I said, 'All right.' * * · * After he came back after staking, before I went up the river, Mr. Cascaden said, 'I want a half interest in the ground.' I said 'When we come to it, I will give it to you.' He said, 'You are going up the river, the ice is pretty bad, and you might get drowned.' I believe he wrote out a bill of sale, and I signed it."

In pursuance to his intention and the request of Bennett, plaintiff did on or about the 2d day of December, 1902, stake for the defendants the following placer mines: For Bennett, side claim No. 12A on Cleary creek, No. 3 from the mouth on Lulu creek, No. 5 above on Solo creek, and fraction No. 2 above on Burns creek; for Scott, No. 8 above on Solo creek; and for Dunbar, fraction between discovery and No. 1 above on Solo creek. Cascaden returned to Fairbanks, and on December 20, 1902, in Bennett's cabin, prepared the notices of location and also a deed from Bennett to himself for an undivided half interest in each of the claims so staked for him. Bennett signed and delivered this deed to Cascaden on that day.

In December, 1902, and for some months afterwards, the recording office was located in Circle City. The notices of location prepared by Cascaden were not filed for record within 90 days from the date of location, or at all. Scott and Dunbar had notice of Cascaden's action in staking the claims in the names of the parties, in pursuance to Bennett's agreement with Cascaden.

On May 21, 1903, Dunbar relocated 12A on Cleary creek in his own name; on May 24th he relocated No. 5 above on Solo creek in the name of Scott, No. 8 above on Solo in his own name, and the fraction between discovery and No. 1

above on Solo creek in the name of Bennett. He used the old stakes set by Cascaden, so far as he could find them, in making his cross-relocations.

Defendants, Bennett, Scott, and Dunbar, admit that they were partners in June, 1903, and then and on July 1, 1903, owned the claims mentioned in Bennett's deed as partners and in equal shares. On July 1, 1903, Cascaden requested Bennett to go before an officer and formally acknowledge his deed of December 20, 1902, which he did, and it was duly acknowledged and recorded on that day. Scott and Dunbar have not deeded to Cascaden any part of the claims so located for them, and refuse to do so. This is a suit for the specific performance of the Bennett-Cascaden agreement of November 30th, and is brought also against Manley and Rice as subsequent purchasers of a third interest in the property.

Miller, West & De Journal, for plaintiff.

W. H. Adams, for Manley & Rice.

McGinn & Sullivan and J. C. Kellum, for Dunbar and Scott.

Condon, Hess & Brown, for Bennett.

WICKERSHAM, District Judge. This is an action to enforce the specific performance of the Cascaden-Bennett contract of November 30, 1902, for the staking of the placer mines in controversy. It becomes necessary to determine the character of the contract. Plaintiff contends that it is an ordinary grubstake contract, by which he acquired a half interest in the mines upon their location by him and the cross-relocation by defendant Dunbar, while the defendants maintain that, as stated and testified to by plaintiff, it is an oral contract to acquire an interest in real property, and void under the statute of frauds.

A perfected mining claim is real property in Alaska. Section 181, Civ. Code; Carter's Ann. Alaska Codes, p. 388; Forbes v. Gracey, 94 U. S. 762, 24 L. Ed. 313; Belk v. Meagher, 104

U. S. 279, 26 L. Ed. 735; Noyes v. Mantle, 127 U. S. 348, 8 Sup. Ct. 1132, 32 L. Ed. 168; St. Louis M. Co. v. Montana Lim., 171 U. S. 650, 19 Sup. Ct. 61, 43 L. Ed. 320; Moore v. Hamerstag, 109 Cal. 122, 41 Pac. 805; Goller v. Fett, 30 Cal. 481; Garthe v. Hart, 73 Cal. 541, 15 Pac. 93; Hopkins v. Noyes (Mont.) 2 Pac. 280; Lindley on Mines (2d Ed.) § 539. The locator holds by congressional grant in præsenti, which can be defeated only by his failure to comply with the requirements of the statute under which he accepted it. Van Wyck v. Knevals, 106 U. S. 360, 1 Sup. Ct. 336, 27 L. Ed. 201. As a general rule, to which there are exceptions (Goller v. Fett, 30 Cal. 482; Patterson v. Keystone Co., 30 Cal. 360; Mining Co. v. Taylor, 100 U. S. 37, 25 L. Ed. 541), an oral agreement for its sale or of any interest therein, or to charge or incumber it, is void, and it can only be conveyed by deed (sections 1044, 1046, Code Civ. Proc.; Carter's Ann. Alaska Codes, p. 354). The case at bar does not present one of the exceptions to the general rule, and plaintiff must either acquire his title by a grubstake contract through the original location, or, if subsequently thereto, by deed.

A grubstake contract is an agreement between two or more persons to thereafter locate mines upon the public domain by their joint aid, effort, labor, or expense, whereby each is to acquire, by virtue of the act of location, such an interest in the mine as is agreed on in the contract. Berry v. Woodburn, 107 Cal. 504, 512, 40 Pac. 802, 804; Hartney v. Gosling, 10 Wyo. 346, 68 Pac. 1118, 1123, 98 Am. St. Rep. 1005; Meylette v. Brennan, 20 Colo. 242, 38 Pac. 75. The title accrues to each as an original locator, though the location be made in the name of one or more of the parties only. Lindley on Mines (2d Ed.) § 331; Book v. Justice Min. Co. (C. C.) 58 Fed. 106. Each party to the grubstake contract not named in the location notice becomes, nevertheless, an equitable owner and tenant in common with those named. Murley v. Ennis, 2 Colo. 300.

A grubstake contract, though oral, is not within the statute of frauds. Book v. Justice Min. Co., supra; Gore v. McBrayer, 18 Cal. 582; Moritz v. Lavelle, 77 Cal. 10, 18 Pac. 803, 11 Am. St. Rep. 229; Hirþour v. Reeding, 3 Mont. 15; Welland v. Huber, 8 Nev. 203; Lindley on Mines (2d Ed.) § 858. Such a trust estate, when clearly established by the evidence, will be enforced in equity. Lakin v. Sierra Buttes Min. Co. (C. C.) 25 Fed. 337; Hunt v. Patchin (C. C.) 35 Fed. 816; Book v. Justice Min. Co., supra; Lockhart v. Johnson, 181 U. S. 516, 21 Sup. Ct. 665, 45 L. Ed. 979. The burden of proof is upon the one alleging the trust to prove it by full, clear, and satisfactory evidence. Hopkins v. Grimshaw, 165 U. S. 342, 17 Sup. Ct. 401, 41 L. Ed. 739, citing with approval Prevost v. Gratz, 19 U. S. (6 Wheat.) 481, 5 L. Ed. 311; Slocum v. Marshall, 2 Wash. (C. C.) 397, Fed. Cas. No. 12,953; Smith v. Burnham, 3 Sumn. 435, Fed. Cas. No. 13,019.

Is the contract sued upon in this case a grubstake contract? The allegation in the complaint is that plaintiff, who was then preparing to and did start on a prospecting trip to locate mines for himself and at his own expense, agreed with Bennett to stake claims for him and his partners; also upon Bennett's agreement to record such locations as were made for him and his partners, "and give to the plaintiff a share and interest of one-half in all such locations so made by him for them." In his testimony Cascaden states the contract substantially in the words of his complaint, except that he adds "and together we would prospect and work the ground." He went out on the prospecting trip, and in addition to his own claims staked those for Bennett, Scott, and Dunbar, and immediately upon his return prepared the notices of location therefor and the deed from Bennett conveying to him a half interest in the claims staked for Bennett, who signed the deed, and delivered it to Cascaden.

It is apparent that many of the usual elements of a grub-stake contract are missing from the original oral agreement sued upon in this case. There was no aid given to the venture by Bennett; no grub, nor tools, nor assistance, nor labor was advanced, nor expense nor obligation assumed by him. It was a naked promise by Cascaden, without consideration, and in no legal manner bound him to perform any service in prospecting or locating for Bennett. No fiduciary relation was created thereby which made nonaction on Cascaden's part a fraud upon Bennett. If he had refused or failed to stake for Bennett, or had then staked the claims in dispute for another person, no action could have been maintained against him by Bennett for damages or breach of contract. If one gratuitously stakes a mining claim for and in the name of another, he cannot enforce specific performance of an oral promise made by the principal subsequent to the location, that he will convey an interest in the claim to him in consideration for his services in locating the mine, because such oral promise is within the statute of frauds and void. Moore v. Hamerstag, 109 Cal. 122, 41 Pac. 805.

Plaintiff alleges in his complaint that, in consideration of his promise to stake for Bennett, Scott, and Dunbar, they "promised, agreed, and covenanted that they would forthwith after such staking fulfill the other requirements exacted by the rules and regulations governing the location of placer mining claims on vacant public lands, and more particularly record said locations, and give to the plaintiff a share and interest of one-half in all such locations so made by him for them." To paraphrase it, the alleged oral agreement was that "after such staking" the defendants would record "and give to the plaintiff" an interest. The defendants did not agree to give until after their title vested by staking; it was an agreement that in consideration of Cascaden's services in staking they would thereafter convey to him an interest. The allegation is that he was to

acquire his title by virtue of a conveyance from defendants subsequent to the location and not from it. Cascaden so understood the agreement, and gave it that practical construction by preparing a deed "after such staking," and procuring Bennett to sign it, and he now brings this suit praying for the specific performance of the contract by a decree "ordering the defendants to convey." His original oral contract with Bennett was not a grubstake agreement for a joint interest in the mine with Bennett by virtue of the location, but was one which pledged Bennett to convey an interest after he acquired title by location; being oral, it was within the statute of frauds and void.

On Cascaden's return to town "after such staking," he prepared, and Bennett signed and delivered to him, the deed conveying a half interest in the mines so staked for Bennett. The location notices prepared by Cascaden at the same time, and signed by Bennett, were not recorded, and the claims lapsed at the end of 90 days. Section 15 Pol. Code; Carter's Ann. Codes, p. 138. In May Dunbar restaked the claims, and it is admitted that by virtue thereof Bennett became the equitable owner and a tenant in common in a one-third interest in all the mines that he had previously conveyed by his deed to Cascaden. On July 1st, while the title stood in that way, Cascaden presented his deed to Bennett, who acknowledged it before an officer authorized to take acknowledgment of deeds, and again delivered it to Cascaden, who thereupon had it recorded on that day. Bennett's intention was to convey to Cascaden a full undivided one-half interest in the property when he first made the deed on December 20, 1902. When he acknowledged and redelivered it on July 1, 1903, he had the like intention, but then owned only a one-third interest. His deed conveyed all that interest to Cascaden, who thereupon became the owner thereof, as a tenant in common with Scott and Dunbar.

It is, then, my opinion that, so far as it is based upon the original oral agreement, this suit must fail because the agree-

ment was within the statute of frauds and void; that by the deed from Bennett acknowledged, redelivered, and recorded on July 1, 1903, Cascaden became the owner of an undivided one-third interest in all the claims mentioned therein.