CASCADEN v. DUNBAR et al.

DUNBAR et al. v. CASCADEN.

(Circuit Court of Appeals, Ninth Circuit. October 28, 1907.)

No. 1,312.

1. FRAUDS, STATUTE OF—CONTRACTS WITHIN STATUTE—EXECUTORY AGREEMENT FOR JOINT VENTURE.

A parol agreement by which one party agreed to locate and mark mining claims and prepare the notices of location which were to be recorded by and at the expense of the other parties, the first party to have a half interest in the claims, and the second parties the other half interest, was one for a joint venture, to which both parties were to contribute personal services and money for their joint and equal benefit, and is not within the statute of frauds.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, Frauds, Statute of, § 138.]

2. TRUSTS—CONSTRUCTIVE TRUSTS—FRAUDULENT BREACH OF ORAL AGREEMENT FOR ACQUISITION OF MINING CLAIMS.

One of defendants, on behalf of himself and his codefendants, who were his partners in the freighting business in Alaska, entered into an agreement with plaintiff by which the latter was to locate mining claims in the name of some one of defendants, who were to record the locations and pay the cost of recording, plaintiff to have a half interest in such claims, and defendants together the other half interest. From that time forward defendants as partners engaged in dealing in and working mining claims. Plaintiff located certain claims, and delivered the location notices to defendants, who did not, however, record the same, but, after the time for recording them had expired, relocated the claims for their joint benefit. *Held*, under the evidence, that defendants became partners for mining purposes from the time of the agreement made with plaintiff, and were all bound by such agreement; that their action in failing to perfect plaintiff's locations, and in relocating the claims, was for the fraudulent purpose of cheating plaintiff of his half interest; and that in equity they held such interest as trustees, for his benefit.

Appeal from the District Court of the United States for the Third Division of the Territory of Alaska.

These are cross-appeals, the plaintiff below being the appellant and cross-appellee, and the defendants the appellees and cross-appellants. The suit was brought to charge the defendants Dunbar, Scott, and Bennett, as constructive trustees of the plaintiff's alleged interest in certain mining claims situated in the Fairbanks mining district of Alaska, and to compel the conveyance thereof to him; the substance of the complaint being that on or about November 30, 1902, the plaintiff, being about to start on a prospecting trip for himself, entered into an agreement with those defendants, alleged to have been copartners carrying on the business of packers and miners under the name, style, and firm of Charles Scott, John Bennett, and George F. Dunbar, by which the plaintiff was at his own expense to proceed to search for, pros-

pect, and stake certain placer mining claims, and that, in addition to the claims staked for himself, he was to stake for, and in the name of, the said named defendants, or either of them, certain placer mining claims, in consideration of which the said named defendants agreed that they would forthwith, after such staking, record the locations thereof, and fulfill the other requirements of the rules and regulations governing the location of placer mining claims on vacant public lands, and convey to the plaintiff a one-half interest therein; that in pursuance of the agreement, and in accordance with those provisions, the plaintiff did on or about December 2, 1902, stake for the defendants Dunbar, Scott, and Bennett the following placer mining claims: "(A) In the name of the defendant John Bennett, side claim No. 12A below discovery on Cleary creek on the right limit, and the first tier thereof, placer mining creek claim No. 3, from the mouth of Lulu creek, a tributary of Cleary creek, placer mining claim No. 5 above discovery on Solo creek, a tributary of Fish creek, and the fractional creek claim No. 2, above discovery on Burns creek; (B) in the name of the defendant Charles Scott, creek placer mining claim No. 8 above discovery on Solo creek; (C) in the name of the defendant George F. Dunbar, a fraction known and described as fractional creek placer mining claim between discovery creek placer mining claim between discovery and No. 1 above on Solo creek, about 1,100 feet in length,—all of which said claims and creeks are situated in the Fairbanks mining district of Alaska." And that thereupon the defendant Bennett did on the 20th day of December, 1902, convey to the plaintiff a one-half interest in the claims so staked in Bennett's name, but that thereafter, intending to cheat the plaintiff out of his interest in the claims so located by the plaintiff, he entered into a fraudulent scheme with the defendants Scott and Dunbar, by which the three would abstain from recording the notices of the location of the claims as required by statute, and, in pursuance of such fraudulent scheme, the said three named defendants did so abstain and "so endeavored to cause the said claims to lapse and revert, and become reopen for entry," by reason of their failure to record, and there and then, and after the time for recording had passed, and that said defendants deemed said claims reopen for location, the said defendants Scott, Bennett, and Dunbar, with the intent to cheat and defraud the plaintiff as aforesaid, re-entered them as follows: "(A) The defendant George F. Dunbar restaked, relocated, and recorded in his name, for the partnership, side claim No. 12A below discovery on Cleary creek, right limit, first tier, and also the other claims previously located by the plaintiff in the name of the defendant Bennett, and also creek claim No. 8 above discovery on Solo creek, located by the plaintiff in the name of the defendant Scott. (B) The defendant Bennett restaked, relocated, and recorded, in his name for the partnership, the fractional creek claim previously located by the plaintiff in the name of the defendant George F. Dunbar, being fractional creek claim, about 1,100 feet long, situated on Solo creek between discovery and No. 1 above. (C) The defendant Charles Scott located in his name, for the partnership, the claim formerly located by the plaintiff for the defendant Bennett, to wit, No. 5 above discovery on Solo creek." The complaint further alleged that on the 17th day of May, 1904, the defendants Dunbar, Scott, and Bennett attempted to convey to the defendants Manley and Rice a one-third interest in the claim No. 12A below discovery on Cleary creek, and that those defendants had at the time full knowledge of the plaintiff's rights in the premises; that the claim last mentioned is of a value in excess of $200,000; that the defendants are in possession thereof, operating the same, and extracting gold therefrom, to the plaintiff's damage; that the plaintiff has performed all of the covenants and conditions on his part to be performed under the agreement alleged, and has requested the defendant to convey to him, by a good and sufficient deed, his one-half interest in the claims, and to let him in possession thereof, and to account to him and pay him his share of the proceeds thereof—all of which they refuse to do. The defendant Bennett filed a separate answer, in which he admitted making the deed to plaintiff of December 20, 1902, but denying all of the other allegations of the complaint. The other defendants filed a joint answer, in which they denied all of the allegations of the complaint, with the exception that they admitted their possession and operation of claim No. 12A below discovery on Cleary creek, and admitted that

that claim is worth $50,000. Upon the issues thus raised the case was tried before the court, and resulted in a decree directing a conveyance, by the defendants to the plaintiff, of an undivided one-third, interest in the relocated claims.

McGinn & Sullivan, J. C. Campbell, and W. H. Metson, for appellant and cross-appellee.

T. C. West, Fernand De Journel, Hugh O'Neill, and John R. Jones, for appellees and cross-appellants.

Before GILBERT and ROSS, Circuit Judges, and DE HAVEN, District Judge.

ROSS, Circuit Judge (after stating the facts as above). The court below found the making of the alleged contract by the plaintiff with Bennett; that it was oral; that at that time Bennett, Scott, and Dunbar were general partners and then engaged in freighting, and immediately thereafter "in locating, acquiring, and working placer mines" in the vicinity of Fairbanks. The evidence shows without conflict that in the early part of December, 1902, the plaintiff made the locations set out in the complaint for the defendants Bennett, Scott, and Dunbar, and prepared the notices of location thereof, and gave them to Bennett for recordation, and that Scott and Dunbar, as well as Bennett, had actual notice of the plaintiff's action in locating the claims; and the court below so expressly found. But the court also found that "neither Scott nor Dunbar made any agreement of any kind with the plaintiff Cascaden, nor gave him any power or authority to locate mines for them, and the evidence does not show that Bennett had any power, as partner or otherwise, to employ him for that purpose." Other findings of the court below are as follows:

"That on May 21, 1903, Dunbar relocated bench claim No. 12A below discovery on Cleary creek, on the right limit and first tier, in his own name; on May 24, 1903, he relocated No. 5 above on Solo creek in the name of Scott, No. 8 above on Solo in his own name, and the fraction between discovery and No. 1 above on Solo creek in the name of Bennett; in doing so he saw and used the stakes set by Cascaden in his prior locations, and had full notice and knowledge thereof.

"On July 1, 1903, Scott, Bennett, and Dunbar were general partners, and held and owned each and all of the claims so mentioned in paragraphs 5 and 9 herein, as equal partners, and that on that day Bennett was the owner as such partner, and in possession of an undivided one-third interest in and to those placer mining claims mentioned in paragraphs 5 and 9 in these findings, and in those certain placer mining claims described in his deed to Cascaden so made and delivered on December 20, 1902; that on July 1, 1903, Cascaden presented the deed so made and delivered to him by Bennett on December 20, 1902, to the said Bennett, and requested him to formally acknowledge the same, and the said Bennett did on said July 1, 1903, acknowledge the same to be his deed, before J. Tod Cowles, a notary public in and for Alaska, who thereupon wrote his certificate of acknowledgment thereon; and the said Bennett again delivered the same to Cascaden, who thereupon filed the same for record, and the said deed and certificate of its acknowledgment was on that day recorded in the office of the recorder in the Fairbanks precinct, Alaska.

"That on July 1, 1903, and for a long time prior thereto, the placer mining claims so described in Bennett's said deed to Cascaden had been duly located by the defendants Bennett, Scott, and Dunbar; a discovery of mineral had been made thereon; the boundaries had been so marked that they could be

readily traced; and notices of location therefor had been filed and recorded in the office of the recorder in the district where they were situated.

"That on the 17th day of May, 1904, the defendant Bennett, made, signed, and delivered a deed in writing, whereby he attempted to convey to the defendants Scott and Dunbar a full, undivided one-third of the title to the placer mining claims formerly by him sold and conveyed to plaintiff Cascaden, by his deed of December 20, 1902, and acknowledged and recorded July 1, 1903, and that said Scott and Dunbar took and accepted said deed with full notice and knowledge of the prior deed to Cascaden. That on the 17th day of May, 1904, and subsequent to Bennett's deed to them, Scott and Dunbar made, signed, and delivered the deed in writing, whereby they attempted to convey to defendants Manley and Rice a full, undivided one-third of the title to the placer mining claims, so formerly sold by Bennett to Cascaden, and that said Manley and Rice took and accepted said deed with full notice and knowledge of the prior deed from Bennett to Cascaden of December 20, 1902, and its acknowledgment and record on July 1st, 1903."

The decree of the court below evidently proceeded upon the theory that Bennett acquired an undivided one-third of the claims described in the decree, by virtue of Dunbar's location thereof in May, 1903, which undivided one-third passed by the deed of Bennett to the plaintiff, executed December 20, 1902, and acknowledged and redelivered July 1, 1903—the defendants Manley and Rice having notice of the plaintiff's rights in the premises.

A careful consideration of the evidence in the case satisfies us that the plaintiff should have been awarded the undivided one-half of the interest of the defendants in all of the claims so relocated, for we think the record shows the truth to be that the defendants Bennett, Scott, and Dunbar were mining partners from the time of the making of the original contract of November 30, 1902, and that Bennett entered into the contract on behalf of himself, Scott, and Dunbar, and that the three, for the purpose of cheating the plaintiff out of his interest in the claims, thereafter entered into a fraudulent scheme by which they would and did withhold from recordation the notices of the locations made and prepared by the plaintiff, and after the time specified by the act of Congress for the recording of such notices had expired, made the relocations of 1903. We think it plainly appears that all of this was done for the fraudulent purpose of cheating the plaintiff out of his one-half interest, and it is equally plain that equity will not permit such purpose to be accomplished. That such cases do not come within the statute of frauds is well settled. The agreement involved personal services and necessary expenses incurred in the locations by the plaintiff, and necessary expenditures by the defendants Bennett, Scott, and Dunbar in recording the notices of such locations at Circle City (200 miles distant, it appears), where was located the office of the recorder of the mining district in which are situate the claims in question, and such other expenditures as may have been required by the rules and regulations governing such locations in that district. It was a joint venture, to which both parties to the agreement stipulated to contribute services and money for their joint and equal benefit. See Gore v. McBrayer, 18 Cal. 582; Sandfoss v. Jones, 35 Cal. 487; Moritz v. Lavelle, 77 Cal. 11, 18 Pac. 803, 11 Am. St. Rep. 229; Murley v. Ennis, 2 Colo. 300; Welland v. Huber, 8 Nev. 203; Hirbour v. Reeding, 3 Mont. 13; Raymond v.

157 F.—5

Johnson, 17 Wash. 232, 49 Pac. 492, 61 Am. St. Rep. 908; Berry v. Woodburn, 107 Cal. 511, 40 Pac. 802; Lindley on Mines, §§ 796, 797; Snyder on Mines, §§ 1592–1596.

The judgment is reversed, and the cause remanded to the court below, with directions to award the plaintiff an undivided one-half of the interest of the defendants in the claims relocated by the defendant Dunbar in May, 1903, and his appropriate interest in the proceeds thereof, if any.