Wayne L. FEUSNER, also known as Wayne Feusner,
Roy H. Feusner, also known as Roy Feusner, Roy D.
Feusner, Roy H. Feusner and Sons, a Partnership,
Appellants (Defendants below),

v.

C. R. FARLEY, Appellee (Plaintiff below).

Wayne L. FEUSNER, also known as Wayne Feusner,
Roy H. Feusner, also known as Roy Feusner, Roy D.
Feusner, Roy H. Feusner and Sons, a Partnership,
Appellants (Defendants below),

v.

Shelby GIBLER, Appellee (Plaintiff below).

Nos. 2861, 2862.

Supreme Court of Wyoming.

May 12, 1959.

338 Pac.2d 835

Thomas M. McKinney, Basin, Robert B. Bowman (of Bowman & Bowman), Lovell, for appellants.

J. D. Fitzstephens and E. J. Goppert (of Goppert & Fitzstephens), Cody, for appellees.

Before BLUME, C. J., and PARKER and HARNS-BERGER, JJ.

126

## OPINION.

Mr. Justice HARNSBERGER delivered the opinion of the court.

C. R. Farley and Shelby Gibler each brought their separate actions against defendants. As their claims were identical against the same defendants and would be determined upon the same evidence, the cases were consolidated for trial and will similarly be disposed of in this court.

Plaintiffs claimed defendants Roy H. Feusner and Wayne L. Feusner, his son, orally agreed with Farley and Gibler to engage with them in a joint prospecting and mining venture. The Feusners were to pay Gibler $350 per month and Farley $10 per day and all expenses. Farley was to furnish his jeep and certain instruments; Farley, Gibler and Wayne were to prospect for and locate uranium claims; and Roy, Wayne, Farley and Gibler would own equal shares in any mining claims located.

Defendants claimed that both plaintiffs were merely employees of a dairy business owned wholly, or at least principally, by the Feusner family.

Upon trial to the court, judgment was rendered adjudging each plaintiff to be the owner of a one-fourth interest in the disputed claims subject, however, to a lease of the property held by Lisbon-Uranium Corpo-

ration and to a royalty interest held by one Morris Avery. From that judgment the defendants and each of them appeal.

Defendants contend that the alleged oral agreement was voided because of our Statute of Frauds, the applicable portion of which reads:

"In the following cases every agreement shall be void unless such agreement, or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith:

\*       \*       \*       \*       \*       \*

"Fifth—Every agreement or contract for the sale of real estate, or the lease thereof, for more than one year;" § 5-101, W.C.S.1945.

However, in their brief appellants say, "Appellees rely upon the rule that where two or more parties agree to locate mines upon the public domain through their joint efforts or expense and each is to acquire, by the act of location, an agreed interest in the mine, that the agreement is not within the Statute of Frauds" and that they "have no dispute with this rule of law". Appellants also acknowledge that by its judgment the trial court found the parties had entered into a joint adventure. These concessions sum up to mean that if the court's finding that there was a joint adventure was correct, the Statute of Frauds would not apply.

Notwithstanding, we think it proper to explain how Mecum v. Metz, 30 Wyo. 495, 222 P. 574, rehearing denied 32 Wyo. 79, 229 P. 1105, cited by appellants as supporting their contention, is distinguished from this case and, consequently, is not in point. In the Mecum case the alleged agreement concerned real estate, the

*title* to which was in Metz at the time the purported contract was made and, therefore, the agreement was clearly within the purview of the statute. In this case, at the time the agreement was made, there was no title to the disputed claims in either of the contracting parties. The same situation obtained in Crosby v. Strahan's Estate, Wyo., 324 P. 2d 492, as that in the Mecum case, so it also fails to sustain appellants' claim.

The oral agreement relied upon by plaintiffs in the cases now before us was nothing more nor less than what is generally referred to as a "grubstake" contract. Such contracts have repeatedly been held not to be within Statutes of Fraud.

In Cascaden v. Dunbar, 2 Alaska 408, 412; Id., 9 Cir., 157 F. 62, 84 C.C.A. 566 (certiorari denied 212 U.S. 572, 29 S.Ct. 682, 53 L.Ed. 656); 3 Alaska 671; 9 Cir., 191 F. 471, 112 C.C.A. 115, the court stated:

> "A grubstake contract is an agreement between two or more persons to thereafter locate mines upon the public domain by their joint aid, effort, labor, or expense, whereby each is to acquire, by virtue of the act of location, such an interest in the mine as is agreed on in the contract. * * * The title accrues to each as an original locator, though the location be made in the name of one or more of the parties only. Lindley on Mines (2d Ed.) § 331; Book v. Justice Min. Co. (C.C.) 58 F. 106. Each party to the grubstake contract not named in the location notice becomes, nevertheless, an equitable owner and tenant in common with those named. Murley v. Ennis, 2 Colo. 300. A grubstake contract, though oral, is not within the statute of frauds. * * *" Cascaden v. Dunbar, 2 Alaska 408, 412.

In Book v. Justice Mining Co., C.C., 58 F. 106, 119, 827, it was said:

"* * * An oral agreement to locate a mining claim for the benefit of another need not be in writing. If a party, in pursuance of such an understanding, at the expense of another, locates the claim in his own name, he holds the legal title to the ground in trust for the benefit of the party for whom the location was made; and such party could, upon making the necessary proofs, compel the locator of the mining claim to convey the title thereof to him, although the agreement so to do was not in writing. This familiar principle has been often applied in cases where a party has entered into an oral agreement to locate mining ground for the joint benefit of himself and others, and makes a location in his own name. It has always been held that such oral agreements are not within the statute of frauds. Gore v. McBrayer, 18 Cal. 582; Moritz v. Lavelle, 77 Cal. 10, 18 Pac. Rep. 803; Hirbour v. Reeding, 3 Mont. 15; Welland v. Huber, 8 Nev. 203." Book v. Justice Mining Co., C.C., 58 F. 106, 119.

In Dayvault v. Baruch Oil Corp., 10 Cir., 211 F.2d 335, 340, this language was used:

"The pleadings and the evidence in this posture of the case establish a rather typical joint adventure to acquire, explore and develop oil and gas leases. It is a familiar arrangement in the oil country for those having knowledge and access to oil and gas leases to match their know-how with those who have access to risk capital for the development of oil properties. While not good business practice, it is not uncommon for the joint adventurers to orally agree that one of them shall hold title to the leases in order to expedite the promotion of the joint enterprise. See Blackner v. McDermott, supra [10 Cir., 176 F.2d 498]; Mulroy v. Sessions, supra [Sup., 38 N.Y.S.2d 853];

Hifler v. Calmac Oil & Gas Corp., supra [Sup., 258 App.Div. 78, 10 N.Y.S. 2d 531, 16 N.Y.S.2d 104].
* * *"

The court also stated at 211 F.2d 339:

"If title to partnership property is placed in the name of one of the partners, a fiducial relation is thereby created, as to which he owes the highest degree of honor and good faith. Mattikow v. Sudarsky, supra [248 N.Y. 404, 162 N.E. 296]; Meinhard v. Salmon, 249 N.Y. 458, 164 N.E. 545, 62 A.L.R. 1; Wyoming-Indiana Oil & Gas Co. v. Weston, 43 Wyo. 526, 7 P.2d 206, 80 A.L.R. 1037; Blackner v. McDermott, 10 Cir., 176 F.2d 498. The partnership property is regarded as personal property for the purpose of adjusting the equities of the parties * * *; or equity may impress a trust upon the property for the benefit of the joint adventurer. Meinhard v. Salmon, supra. Or, equity may impress a constructive trust upon the real property for the benefit of the joint adventurers to prevent unjust enrichment and to enforce restitution. * * *"

We entertain the same views as those expressed in the above quoted cases.

Appellants are insistent that the record is devoid of any evidence which entitled the court to find there was an oral joint adventure agreement between Roy H. Feusner, Wayne L. Feusner, Shelby Gibler and C. R. Farley and say this is especially true with respect to Roy H. Feusner's being a party to any such agreement.

Insofar as the evidence being sufficient to sustain the court's finding that there was such an agreement between the two plaintiffs and Wayne L. Feusner, the transcript of evidence is replete with testimony sup-

porting that conclusion and we deem it unnecessary to recount it at any length. Gibler testified that in his presence Wayne Feusner told Farley, "With your know-how and experience and your Jeep and instruments, and you and Shelby together, I think we'll find it. I'll grubstake you to the rate of $10.00 a day and give you 25%. That would be an equal share with the four of us." He further testified to statements Wayne made in his presence to other persons saying that claims were to be staked half in his and half in his father's (Roy's) names, and when arrangements were being made to secure the services of an aviator to help discover suitable areas, Wayne told the aviator he was dealing with Gibler, Farley, Roy Feusner and Wayne Feusner; and under similar circumstances, Wayne told a surveyor he, Wayne, had an equal interest in the claims with his father, Gibler and Farley. Farley testified to talks he had with Wayne after the agreement was made in which Wayne acknowledged and referred to the claimed agreement and promised to "get the paper drawed up" on their interest. These testimonies were largely corroborated by other witnesses. Such evidence was more than ample to justify the court's finding there was an agreement of joint adventure at least as between the plaintiffs and Wayne Feusner.

With regard to any agreement between plaintiffs and Roy Feusner, the situation is somewhat different. Gibler testified that in a conversation with Roy Feusner, Roy told him practically the same thing that Wayne had told him; that when Gibler said he did not have any money to go ahead and prospect, Roy said Gibler had been with him a long time and he wanted to see him make a success and said, "I think that we can do it." Gibler further testified that in May of

1956, after the claims had been located and mining operations had begun, Roy asked him to let Dale Feusner, another of Roy's sons, run the mine and at the same time told Gibler, "Give us a chance to recover part of our money back before we give you any papers on it". Later about the first of June, Roy told Gibler they had taken out about 200 tons of ore that didn't pay expenses and they were going to get a mining company to mine the claims for 90 days on a 50 percent profit, but they were not selling the claims; that he did not have any money and couldn't give plaintiffs any papers to show any money when they didn't have any. In September following, Roy told Gibler the company was in there for all time and he would see that Gibler had more money than Gibler ever had in his life.

While the above is somewhat meager evidence, it is nonetheless substantial to show that Roy had knowledge of and acquiesced in the arrangement which Wayne made with plaintiffs for the joint adventure. It certainly showed that Roy gave subsequent recognition that plaintiffs had an interest in the fruits of that joint adventure and that he, himself, was accepting benefits and proceeds.

Conceding there was slight evidence of Roy's participation in consummation of the agreement, still the court was entitled to believe Gibler when he said that Roy had told him practically the same thing that Wayne had told him. That testimony incorporated all the representations, proposals and agreements made by Wayne in his dealings with plaintiffs respecting a joint adventure to be undertaken by the four parties. Roy later acknowledged that the plaintiffs as his co-adventurers had an interest in the claims, even though they had been located part in his own name and part in his

son Wayne's name, and this gave further evidence that he was aware of and approved the arrangement made in his behalf by his son Wayne. Furthermore, his excuse for not putting on paper the recognition that plaintiffs had an interest in the claims was an equally tacit acknowledgment that plaintiffs did possess an interest in the mining claims. Under such circumstances, to hold the trial court was without right to include Roy Feusner as a party to the oral agreement of joint adventure would be to ignore the evidence referred to above and to consider that it was not substantial. The trial judge had the best opportunity to see and observe the witnesses whose testimony appears in the record and his obvious reaction was to accept as wholly true what plaintiffs and their witnesses had said under oath.

While the evidence in this case is sufficient to show Roy's participation in the negotiations which resulted in the grubstake contract, we call attention to the Appellate decision by the Federal Circuit Court of Appeals, Ninth Circuit, upon its review of the Cascaden case, supra at 157 F. 62, 65, for there the Court of Appeals based its decision on a grubstake mining contract which had been entered into by one partner *on behalf of* himself and *the other partners*.

In such a case, this court will not interfere. The judgment of the trial court is affirmed.

Affirmed.