Luis F. González, Plaintiff and Appellee, v. Remedios López Quiñones et al., Defendants and Appellants.

No. 6555. Argued February 20, 1934.—Decided June 4, 1934.
Rehearing denied July 11, 1934.

*Angel A. Vázquez* for appellants.  *L. Muñoz Morales* and *E. Rincón* for appellee.

MR. JUSTICE CÓRDOVA DÁVILA delivered the opinion of the court.

In an authentic document executed before a notary on May 4, 1929, Candelario Quiñones acknowledged himself indebted to his nephews, Francisco and Remedios López Quiñones, in the sum of $383.40, which, according to the grantor, said nephews inherited from their parents, Pedro López and

Faustina Jovita Quiñones, and their grandmother, Lorenza Quiñones, and which was delivered to Candelario Quiñones.

On November 6, 1930, Francisco López Quiñones brought an action (No. 13450) in the District Court of San Juan against Candelario Quiñones to recover the debt of $383.40 acknowledged by the latter, with interest at 1 per cent monthly from July, 1894, to October, 1930, the share of the said Francisco López Quiñones amounting to the sum of $1,027.51.

Candelario Quiñones in his answer to the complaint of his nephew admitted the execution of the deed and alleged that, owing to the fact that he was advanced in years and had been deserted many years before by his wife, Hermógenes Asencio, and with the intention of punishing the latter for her inconsiderate conduct toward him, and since he had no other means of freely disposing of his property, as his wife had revoked the power of attorney which she had given him to manage and administer said property which consisted of a rural parcel, the only property he owns, located in the ward of Guzmán Abajo of Río Grande, he and his two nephews, by mutual agreement and at their instance, decided to simulate, and did simulate, a debt to them, so that, at his death, the said nephews could attach his property to collect the said debt thus acknowledged by him; that it was in consideration of that false and simulated agreement that the deed of acknowledgment of the debt was executed, the two brothers agreeing to execute and sign a private document in which they were to bind themselves not to attempt to collect the said debt during the lifetime of the supposed debtor, and that his said nephews not only had failed to execute the said private document but on the contrary had attempted, and were attempting, to enforce payment of the said debt by judicial action.

On the day set for the trial of this case, the attorney for Candelario Quiñones, who had filed a motion for a continuance which was denied, stated that as he did not have his

evidence in court at the time he could not go to trial, and withdrew. After the trial was held, the court rendered judgment, on March 25, 1931, ordering the said Candelario Quiñones to pay to the plaintiff, Francisco López Quiñones, the amount claimed.

On March 11, 1931, Remedios López Quiñones filed another complaint (No. 14183) in the District Court of San Juan against the same Candelario Quiñones to enforce payment of $1,027.51 arising from the debt acknowledged in a public deed by the defendant.

The defendant answered under oath, and set up the simulation of the alleged deed of March 4, 1929, in terms similar to those he used in answering the complaint filed by Francisco López Quiñones.

The defendant Candelario Quiñones died on July 2, 1931, while that action was pending, and his heirs, Juan Bernabe, León Quiñones, and María Hermógenes Asencio asked that they be substituted in the case, and requested a judgment in favor of the plaintiff since, after a thorough investigation, they were convinced that the facts alleged in the complaint by the plaintiff are entirely true. The court then rendered judgment ordering the defendants to pay the amount claimed in the complaint.

On February 13, 1931, the present plaintiff, Luis F. González, filed an action (No. 14021) in the district court against Candelario Quiñones to recover the sum of $2,987.78, of which $2,485 was claimed for professional services and $502.78 for cash advances alleged to have been made by González to Quiñones. The latter was summoned on the same day, requested an extension of time to answer on February 24, and two days later filed a motion recognizing the truth and legitimacy of the amounts claimed and waiving his right to appeal, in order that the said judgment might become final (*firme*) and executory immediately. On February 28, 1931, the court rendered judgment as requested.

The present action was brought on the basis of the foregoing facts.

Luis F. González sues Remedios and Francisco López Quiñones and the heirs (*Sucesión*) of Candelario Quiñones, consisting of his children and widow, and alleges that the acknowledgment of indebtedness made by Candelario Quiñones in favor of his nephews is null and void because it is false and simulated, and because it is the result of a conspiracy in fraud of creditors; and that the judgments obtained by Francisco and Remedios López Quiñones against Candelario Quiñones in civil suits Nos. 13450 and 14183, are also null and void. It is alleged that these judgments are null and void because the cause of action on which they are based is false and because the acknowledgment of indebtedness is a simulation in fraud of creditors.

The plaintiff alleges that Remedios López Quiñones has obtained an order of execution of judgment in the action brought against Candelario Quiñones and has set a date for the judicial sale of a 43-acre (*cuerdas*) parcel of land, which is the only known property of the debtor, to the prejudice of the rights of the plaintiff, who is entitled to preference over the judgments obtained by the defendants, as to the date on which they became final. It is also alleged that, with the exception of the property mentioned, Candelario Quiñones, now represented by his heirs, has no other assets against which the plaintiff can enforce his credit.

The defendants deny the essential allegations of the complaint, and that the judgments obtained by them against Candelario Quiñones prejudice the plaintiff or prevent him from collecting his credit, and allege that Candelario Quiñones owned not only the property attached by the defendant, but also another rural property known to the plaintiff and recorded without encumbrance in the registry of property, and certain personal property also known to the plaintiff.

The defendants also deny that the judgment obtained by the plaintiff has preference over that obtained by Francisco

López Quiñones, who, long prior to the judgment entered in favor of the plaintiff, attached the property involved in this suit, and entered notice of his attachment in the registry of property. It is likewise denied that Candelario Quiñones owed any debt to the present plaintiff prior to May 4, 1929, and it is alleged that after the action brought by Francisco López Quiñones against Candelario Quiñones, the plaintiff and said Candelario Quiñones combined for the purpose of prejudicing the rights of the defendants and, pursuant to their agreement, the plaintiff brought an action against the aforesaid Candelario Quiñones, who speedily acquiesced to the complaint while he delayed his answer to that of Francisco López Quiñones, and requested a judgment against himself, asking that it be declared final and executory immediately, all in order that the present plaintiff might obtain a judgment credit and might allege a preference against these defendants and thus destroy their right to recover from the property of Candelario Quiñones.

The lower court rendered judgment holding the acknowledgment of indebtedness made by Candelario Quiñones in favor of his nephews Francisco and Remedios López Quiñones to be null and void, decreeing the nullity of the judgments obtained by Francisco and Remedios López Quiñones against Candelario Quiñones and his heirs, because the cause of action on which they were based was false and nonexistent and the said judgments were obtained in fraud of creditors, and holding that the credit of the plaintiff was preferred and enforceable against any of the assets of the debtor Candelario Quiñones or his heirs. The defendants were also ordered to pay "the costs, expenses, and disbursements of the attorney for the plaintiff, as the court deems that there was manifest contumacy on their part in this action."

The first assignment is that the court erred in rendering judgment for the plaintiff, since the latter did not show that he has the right to disturb the final judgments rendered in actions to which he was not a party. The defendants con-

tend that the trial court should have upheld their allegation regarding the nullity and nonexistence of the judgment rendered by virtue of the acquiescence of Candelario Quiñones to the complaint filed against him by Dr. Luis F. González. The appellants argue that this motion is not signed or sworn to personally by the defendant Candelario Quiñones or by his attorney, nor does it contain a sworn statement of the facts giving rise to the debt, nor is it shown that the sum confessed is justly due. The motion requesting judgment and waiving the right to appeal, signed by the attorney for Candelario Quiñones, reads as follows:

"Comes now the defendant in this case, by his undersigned attorney, and respectfully shows and prays:

"First: That the defendanthas been duly notified of the complaint filed against him by the plaintiff Dr. Luis F. González. And, since the debt claimed by the plaintiff in his complaint is true and legitimate, and the defendant does not wish to delay unnecessarily the proceedings in this case, he acquiesces and consents to the entry by this Hon. Court of a judgment for the plaintiff, ordering the defendant to pay the plaintiff the sum of $2,987.78 as principal, without interest or costs.

"Second: That in order that the said judgment may become final and executory immediately, and to avoid unnecessary delay and expense, the defendant waives the right to appeal.

"Therefore: The defendant prays that the Hon. Court accept this motion and, on its merits, render judgment against him ordering. him to pay to the plaintiff the sum of $2,987.78, without interest or costs.

"Río Piedras, P. R., February 26, 1931.
(Sgd.) Rodolfo Ramírez Pabón,
Attorney for the defendant."

The defendants maintain that the acquiescence thus made is contrary to the provisions of section 359 of the Code of Civil Procedure, which reads as follows:

"A statement in writing must be made, signed by the defendant and verified by his oath, to the following effects:

"1. It must authorize the entry of judgment for a specified sum..

"2. If it be for money due, or to become due, it must state con-cisely the facts out of which it arose, and show that the sum confessed therefor is justly due, or to become due.

"3. If it be for the purpose of securing the plaintiff against a contingent liability, it must state concisely the facts constituting the liability and show that the sum confessed therefor does not exceed the same."

The English text of section 358 of the same code says that a judgment by confession may be entered, without action, either for money due or to become due, or to secure any person against contingent liability on behalf of the defendant, or both, in the manner prescribed by this chapter. Such judgment may be entered in any court having jurisdiction for like amount.

The Spanish text says that judgment may be entered without a trial. This section is identical with section 1132 of the Code of Civil Procedure of California.

The defendants cite several cases from the Supreme Court of that State in support of their contention that the confession should be signed and sworn to by the party, and must state concisely the facts out of which the debt arose. The only case applicable to the question raised is that of *Pond* v. *Davenport*, 44 Cal. 481, in which the defendant, after the action had been brought and he had been summoned, and before the time for answering had expired, confessed the debt and agreed that judgment be rendered. In that case the court said:

"The judgment which Corbet obtained against Davenport must be deemed a judgment by confession. The time for answering had not expired and the judgment could not have been taken by default, and does not purport to have been a judgment of that character. On the contrary it was based upon a verified statement made by the defendant, consenting to the judgment, specifying the amount, and undertaking to state the subject matter of the indebtedness, as founded on a promissory note due from defendant to the plaintiff in the action. It was clearly intended to be, and is, in its legal effect, a judgment by confession."

At the time the above decision was rendered, sections 374, 375, and 376 of the Practice Act, subsequently incorporated in the Code of Civil Procedure as sections 1132, 1133, and 1134, were in force in California. These sections correspond to sections 358, 359, and 360 of our Code of Civil Procedure.

We agree with the Supreme Court of California that a judgment rendered after the defendant has been served with summons and before he has answered the complaint, is a judgment by confession, *cognovit actionem;* but we do not share the opinion of the said court as to the applicability of sections 374 and 375 to a confession of this nature.

The words "without action" refer to judgments rendered without the institution of an action. The California court, however, considers that the provisions of the Practice Act cover a judgment rendered after an action has been commenced and after the issuance and service of process.

According to the common law, a judgment by confession is one rendered in favor of the plaintiff, where the defendant, instead of answering the complaint, acknowledges the claim, or at any time before the trial withdraws his pleadings and agrees that judgment be rendered against him. Such judgment, obtained by confession after the suit is begun, is to be distinguished from a judgment obtained by confession without the institution of an action, as happens in many jurisdictions and in the State of California.

From the treatise "Black on Judgments," volume 1, page 69, we copy the following:

"All judgments rendered upon the confession of the defendant may be divided into two classes: 1. Those entered in an action regularly commenced by the issuance and service of process; 2. Those entered upon the confession of the defendant, or his warrant of attorney, without the institution of an action. The former class of judgments are well known to the common law and must be tested and sustained by rules and principles existing independently of statutes, while judgments of the latter class derive all their efficacy from positive law and must conform, in order to be valid, to all

the requirements and formalities set up by the legislature. It is frequently a matter of importance to determine whether a particular judgment belongs to one class or the other, because, if not covered by the statute, it is not impeachable for lack of an affidavit, statement of indebtedness, or other support required by the act. This distinction is recognized by the authorities. Thus a statute which provides that any person may, without process, appear in person or by attorney and confess judgment for any bona fide debt, but, in such case a petition shall be filed, and other acts be done, does not apply to cases where the party is regularly cited, but only to cases of voluntary appearance without process. So where a defendant accepts service of process and afterwards confesses judgment, the plaintiff's affidavit of the justness of the claim, required in the case of confession without action, is held to be unnecessary. Now judgments entered for the plaintiff upon the defendant's admission of the facts and law, as the same are known to the common law and exist independently of statutes, are of two varieties; first, judgment by cognovit actionem, and second by confession relicta verificatione. In the former case the defendant, after service, instead of entering a plea, acknowledges and confesses that the plaintiff's cause of action is just and rightful. In the latter case. after pleading and before trial, the defendant both confesses the plaintiff's cause of action and withdraws or abandons his plea or other allegations, whereupon judgment is entered against him without proceeding to trial.''

The same author, in referring to judgments by confession without action, on page 51, says:

''One method of confessing a judgment without action or process is by a warrant of attorney. This is an authority given by the debtor to a named attorney, or to any attorney of a given court or in a given jurisdiction, empowering him to appear for the defendant and confess judgment for a designated amount. This differs from a cognovit in that an action must be commenced before a cognovit can be given, but not before the execution of a warrant of attorney. In so far as this procedure may be regulated by statute in any jurisdiction, it must of course comply strictly with the requirements of the law. But in most of the states there are statutes which authorize a judgment to be entered upon the confession of the defendant, without action, upon the filing of a verified statement showing the facts out of which the indebtedness arose, and an affidavit that the debt is just and actual, and sometimes upon the observance of cer-

tain additional formalities. This is by far the most usual method of confessing judgments, and therefore will principally engage our attention in this chapter.''

As may be seen, judgments by confession after an action has been brought, are of two classes: *Cognovit actionem* and *relicta verificatione*. The former case occurs where the defendant, after service, instead of entering a plea, confesses the cause of action; the latter case occurs where the defendant, after pleading and before trial, confesses the cause of action and withdraws his answer or other pleading. In each one of these cases the judgment is governed by rules and principles originating in the common law and not by provisions issuing from the legislative power, and authorizing the confession of judgments without action. An action brought and confessed cannot be attacked because it is not accompanied by an affidavit or a statement of the facts out of which the debt arose or other additional requirements.

There is no doubt that the requirements of section 359 of our Code of Civil Procedure should be strictly complied with where a claim is confessed without action. Must these requirements be met where a debt is confessed after the complaint is filed and the defendant is summoned? The Supreme Court of California has decided in the affirmative in the case of *Pond* v. *Davenport, supra*. This opinion cannot be supported, in our judgment, unless we reach the conclusion that the requirements for confessions without action are also applicable to confessions made after the action has been commenced. The words of the statute are clear and do not seem to warrant such interpretation.

Section 359 requires that the party who confesses, where the judgment is for money due, state concisely the facts out of which the debt arose and show that the sum confessed is justly due, or to become due. The purpose of this statement, according to the Supreme Court of California (*Cordier* v. *Schloss,* 18 Cal. 582), is to inform the creditors and place them in a position to detect fraud, where it exists. It seems

logical not to require said statement where an action has been brought and a statement of the facts out of which the debt arose has been made in the complaint. In this case the creditors can acquire knowledge of these facts without need for a repetition by the defendant of the allegations of the complaint. Section 359, in our opinion, is applicable only to confessions made before an action is brought.

It is further argued that the evidence is insufficient to support the judgment, and that the court committed manifest error in weighing it. The deed of acknowledgment executed by Candelario Quiñones in favor of his nephews, Francisco and Remedios López Quiñones, is dated May 4, 1929. The plaintiff alleges that Candelario Quiñones made this acknowledgment for the sole purpose of defeating the rights of his wife and of his creditors at that time. In order to establish that this acknowledgment was made for the purpose of defrauding the plaintiff, the latter should have shown that he was, at the time, a creditor of Candelario Quiñones, who then lacked sufficient assets to cover the obligation acknowledged and the one contracted with the plaintiff. Even so, it could perhaps be said that the acknowledgment of the debt did not prevent the plaintiff from levying on the property of his debtor to recover an enforceable obligation. As to the capacity of the plaintiff as creditor, it was alleged in the complaint filed by him against Candelario Quiñones and confessed to by the latter, that on July 14, 1928, the said Candelario owed Dr. González $785 for professional services. The existence of this debt, assuming that it does exist, and the acknowledgment by Candelario Quiñones of an obligation in favor of his nephews do not establish, in the absence of other evidence, the alleged fraud on the plaintiff. What property did Candelario Quiñones own when the deed was executed? If he owned sufficient property to cover the obligation acknowledged and the one contracted with Dr. González it cannot be said that there was an intent to defraud. The record contains no evidence as to the property then owned by Can-

delario Quiñones, except his own allegation in his answers to the actions brought against him by Francisco and Remedios López Quiñones, to the effect that his property consisted only of a rural parcel located in the ward of Guzmán Abajo of Río Grande. But even this allegation has not been justified, since Candelario Quiñones, who could have appeared to support it at the trial of the action brought against him by his nephew Francisco, announced, through his attorney, that he was withdrawing from the trial because he had no evidence in court at the time.

Nor is there any evidence in the record as to the value of this parcel alleged to be the only property of Candelario Quiñones. The alleged credit of Dr. González, on July 14, 1928, added to the obligation acknowledged in favor of the nephews of Candelario on May 4, 1929, gives an approximate total of $2,800. It is not true that Candelario Quiñones owned only one parcel. On the same day, July 14, 1928, Dr. González appears taking a lease of two parcels owned by the said Candelario Quiñones; one of forty-three acres (*cuerdas*) and another of nine, both recorded in the registry of property. These two parcels adjoin on one side, and, because they are contiguous, Dr. González stated that they form one parcel, when he himself admits that there are two parcels in the lease contract the fifth clause of which reads as follows:

"With respect to the fences of the parcels leased, it is clearly and expressly agreed between the parties that the lessor, Mr. Quiñones shall go over them as soon as possible so that the two parcels will be duly fenced with *maya* and wire, the maintenance and repair of said fences thereafter being for the account of the lessee, Mr. González, who is obligated to deliver the said fences in the same condition that he receives them."

The fact that the parcels are adjoining and belong to the same owner does not mean that they have been grouped to constitute a single piece of property and that the 9 acres are included in the "area of the 43 acres" as Dr. González affirms. The lease describes the two parcels with different bounda-

ries and the testimony of the sons of Candelario Quiñones is clear as to the existence of a parcel with an area of 43 acres and another with an area of 9 acres.

The plaintiff alleges that, assuming that the debt acknowledged exists and that it arose in the year 1894, as the deed of acknowledgment states, Candelario Quiñones waived, on May 4, 1929, a right of prescription which he had acquired. The plaintiff contends that he can avail himself of the prescription, even though it has been waived by the debtor.

In accordance with section 1837 of the Civil Code, 1930 ed., the creditors and any other person interested in availing himself of prescription may make use of it despite the express or tacit waiver of the debtor or owner. This power, however, is subordinated to the provisions of section 1064 of the Civil Code, 1930 ed., according to which the creditors, after having attached the property of which the debtor may be in possession in order to collect all that is due them, may exercise all of the rights and actions of the debtor for the same purpose, excepting those inherent in his person. *Berríos* v. *Rev. Carmelite Mothers,* 3 P.R.R. 292.

We are of the opinion that the plaintiff, in order to make use of the right granted by this section, should have proved that when the deed of acknowledgment of debt was executed, the assets of Candelario Quiñones were not sufficient to cover his credit and the debt which he considers simulated. There is no evidence on this point in the record. The plaintiff could have enforced and executed his credit on that date. The acknowledgment of debt did not constitute an encumbrance on the property of the supposed debtor, and Dr. González was not prevented, then or thereafter, from exercising his right, and from enforcing it on the property of his alleged debtor. From May 4, 1929 to November 25, 1930, on which date Francisco López Quiñones attached the parcel of 43 acres recording his attachment in the registry of property, more than 18 months elapsed. The complaint of Francisco López Quiñones was filed on November 6, 1930. During all of this time the

said parcel was free from liens and the plaintiff had the opportunity of attaching it. Dr. González sued Candelario Quiñones on February 13, 1931. The debt was confessed on the 26th of said month and on the 28th judgment was rendered by the court. On July 6, 1931, Dr. González had his judgment entered in the registry of property.

The plaintiff alleges that he has attached all of the property of Candelario Quiñones and that the only property in his possession is the parcel of 43 acres of land which had been attached by Francisco López Quiñones. We have shown that Candelario Quiñones also owned a parcel of nine acres, which appears registered in his name in the registry of property. As we have already said, the value of neither parcel was proved. We do not know, therefore, whether or not these assets are sufficient to cover the debt acknowledged and the claim of Dr. González. Juan V. Quiñones Asencio, son of Candelario Quiñones, states that in addition to the two parcels, his father left half an acre of land on which he had a house at the time of the San Felipe hurricane, and five or six head of cattle which he kept on the parcels leased to Dr. González.

This is a case in which both parties, plaintiff and defendant, accuse one another of having combined with Candelario Quiñones to prejudice the rights of the other. The evidence presented is not as clear as might be desired. Certain evidence which was offered, but not admitted, might have thrown light on the questions in controversy. The acknowledgment of debt may have been simulated and there are indications that it was. The claim of Dr. González is not free from suspicion either. The conduct of Candelario Quiñones in either case cannot inspire confidence. But, as we have already said, even though the credit of the plaintiff were legitimate, it is not possible to render judgment in his favor, because he has not shown that he was prejudiced by the acknowledgment of debt made in favor of the nephews of Candelario Quiñones on May 4, 1929.

The judgment must be reversed and another rendered for the defendant, without costs.

Mr. Justice Wolf concurs in the result.

ON MOTION FOR REHEARING

July 11, 1934

MR. JUSTICE CÓRDOVA DÁVILA delivered the opinion of the court.

In this case counsel for the plaintiff filed a motion for reconsideration of the judgment rendered by this court on June 4 of the current year. We denied the said motion and now the plaintiff again appears, by his counsel, alleging that his motion was denied flatly and that the extensive study which counsel for plaintiff has made in his briefs authorizes him to maintain in good faith that a fundamental question of law is involved in this case which merits the attention of this court, in the interest of justice, inasmuch as it is necessary to decide whether or not there is a true distinction between the rescission and the nullity of a contract.

The plaintiff begins by contending that the judgment rendered by the District Court of San Juan in the case of *Luis. F. González* v. *Candelario Quiñones* on February 28, 1931, is valid and effective. We have held, in general terms, that the requirements fixed in section 359 of the Code of Civil Procedure must be applied in cases of confessions of claims without previous action, and not in those cases where the defendant has been summoned, as happened in the case of the claim made by Dr. González. Judgments so rendered are authorized by the law, and it is clear that they do not become invalid because of the fact that a debt is acknowledged after an action has been brought, inasmuch as the facts alleged in the complaint offer the same assurance as does the concise statement of the facts giving rise to the debt, which is required of the debtor when no action has been brought, in order to inform the creditors and place them in a position to detect any fraud which might exist. *Cordier* v. *Schloss,* 18 Cal. 582.

In his brief, the plaintiff analyzes the evidence submitted to show that the debt acknowledged by Candelario Quiñones in favor of the defendants was simulated and fraudulent and then states the reasons which, in his judgment, show that such fraud affects the plaintiff-appellee Luis F. González. Starting from the premise of the alleged simulation, to which we will refer hereafter, we will examine the evidence, taking into consideration the arguments of the plaintiff, to see whether he·was really affected by the said simulation on the date on which it was made, or whether, as he alleges, he is affected at present.

The plaintiff begins by quoting a part of our opinion, which we copy herein, complementing it, in order that the meaning of our words may be properly interpreted:

"What property did Candelario Quiñones own when the deed was executed? If he owned sufficient property to cover the obligation acknowledged and the one contracted with Dr. González, it cannot be said that there was an intent to defraud. The record contains no evidence as to the property then owned by Candelario Quiñones, except his own allegation in his answers to the actions brought against him by Francisco and Remedios López Quiñones, to the effect that his property consisted only of a rural parcel located in the ward of Guzmán Abajo of Río Grande. But even this allegation has not been proved, since Candelario Quiñones, who could have appeared to support it at the trial of the action brought against him by his nephew, Francisco, announced, through his attorney, that he was withdrawing from the trial because he had no evidence in court at the time."

The plaintiff, commenting on this part of our opinion, expresses himself as follows:

"In the first place. we maintain that that statement, made by Candelario Quiñones through his attorney, which is now mentioned, cannot have and does not have the legal, or even the gramatical scope attributed to it, since in that case the truth of that sworn allegation was neither denied nor contradicted; nor was it alleged that Candelario Quiñones had other property; nor does the complaint filed by Francisco López in Civil Suit No. 13450 contain any

allegation concerning the existence of property of the defendant, as may be seen from its text; the said complaint, which is verified, is limited to the liquidation and collection of the supposed credit acknowledged in the deed of May 4, 1929.

"In the second place, account should be taken of why the said statement was made, and under what circumstances; and the record shows that the trial of the case was set by special order for May 10, 1931; that on March 4, a motion for intervention was filed; that on the 9th, this motion had not yet been decided; and it was then that the defendant Candelario Quiñones filed his motion for a continuance and this motion for a continuance, as well as the motion for intervention filed by Luis F. González, was denied by the court in its decisions on the same date, March 10; and the trial was held, and it was at that time, and under those conditions, that the attorney for the defendant Candelario Quiñones appeared in open court and made the statement to which the judge refers in his statement of the case; and the Judge says that the attorney stated *'that not having his evidence in court at that moment he could not go to trial', and withdrew from the court.*

"Does the fact that he did not have his evidence in court *at that moment* mean that he had no evidence? Does it mean that the facts of the complaint are confessed when a verified answer exists denying them? Does it mean that the defendant owns other property besides that mentioned in the answer cited . . . . . and, finally, does not the new sworn statement made by Candelario Quiñones, himself, five months later, on June 1st of the same year, in answering the complaint of Remedios López (Civil Case No. 14183) in which he more emphatically ratifies those same statements, mean anything?"

We mentioned, among other things, the statement of Candelario Quiñones that his assets were limited to a rural parcel, because we wished to set out everything which might relate to the question; but we could well have ignored it, since a statement lacks probatory value where the party who may be affected by it does not have the opportunity to cross-examine. It is argued that in the action against Candelario Quiñones the truth of his statement was neither contradicted nor denied; but counsel for the plaintiff forgets that in this action this question is being discussed, and that the defend-

ants cannot be affected by what Candelario Quiñones may have said at that time, because neither then nor now, have they had an opportunity to avail themselves of the right to cross-examine as to the said statement.

As to taking into account the circumstances under which the said statement was made, it is well to set out some details concerning this point. The complaint of Francisco López Quiñones against Candelario Quiñones was filed on November 6, 1930. On November 14 of the same year, the defendant requested a literal and authentic copy of the public deed of July 1894, which is the origin of the debt, and another literal and authentic copy of the deed of May 4, 1929, which was granted by Candelario Quiñones himself, and requested 10 days, counted from the date on which the said copies should be delivered to him, within which to answer the complaint. On the same day, November 14, the court denied the motion and granted an extension of 15 days to the defendant within which to plead to the complaint. On November 26 of the same year, the defendant requested that the verification be stricken from the complaint. On December 12, the court denied the motion to strike and granted 10 days to the defendant to file his answer. On December 23, the defendant requested a new extension of 20 days to answer the complaint which was granted to him. On January 13, 1931, the answer was filed. On February 25, the defendant was notified that the trial of the case had been set for March 10, 1931, at nine o'clock in the morning. On March 9, the defendant requested the continuance of the trial on the ground that he had been notified of a complaint in intervention. The court denied the motion on the following day because it had also denied, on the same date, the leave to intervene requested by Luis F. González. It was then that the attorney for Candelario Quiñones announced that he was withdrawing from the hearing because he did not have his evidence in court at that moment.

According to the plaintiff, when Candelario Quiñones in his sworn statement said that he owned only one farm, he

spoke in conformity with the real fact, because it is actually a single farm, a single body, composed of two parcels acquired under different titles. He argues that it is a frequent and well-known fact that many landowners acquire and form their farms by partial purchases under different titles which are recorded separately in the registry, and do not trouble to make any legal or recordable grouping, and that in reality it is a single farm and is owned and administered as such, even though for legal and title purposes it is necessary to consider them separately.

It is precisely for legal purposes that these two parcels must necessarily be considered as separate. In accordance with the law, a creditor may impeach the acts of the debtor in fraud of his right, after having attached the assets of the debtor. In order for the plaintiff to be able to say that the alleged simulation was made in fraud of his right, he should have proved that Candelario Quiñones had no assets to cover his obligations, including the simulated debt, and he should have attached all of the property of the debtor. The plaintiff has taken no step whatever to attach the parcel of 9 acres which he considers as "included in the area of the 43 acres," and it is obvious that he cannot take possession of the smaller parcel by executing on the larger. The two parcels of land have different boundaries and, as long as they are not grouped into a single farm and the boundaries of said farm are not determined, they cannot be executed jointly. The record does not show any encumbrance on the 9-acre parcel and, if such is the case, the plaintiff is in a position to exercise any right he may have to the same.

In the opinion of the plaintiff, the only consequence of the legal technicism on which this court rests is that instead of a 43-acre farm a 52-acre farm is involved, which in no way affects "the testimony of the interested party who did not identify the farm by designating its acreage, but referred to its location in a certain ward."

We are not dealing with a mere technicality, but with a reality which the plaintiff would have to face in case he could and should levy execution on the 43-acre parcel. There would always remain nine acres which could not be affected by an execution directed against the 43-acre portion. The plaintiff would have to designate the smaller portion separately before the same could be executed. The testimony of Mr. González does not seem to be in accord with what he states in his brief when he says that the only consequence of the technicality is that instead of a 43-acre parcel a 52-acre parcel is involved. Mr. González, in his testimony, refers only to a 43-acre parcel and not to one of 52 acres. Let us see what he says in his testimony in answer to the questions asked by his own attorney:

"Q. Of course, from the deed it appears that there are two parcels, one of 43 acres and another of 9.

"A. Not at all. All of it is just one individual parcel, and there is no division of any kind there. The 9 acres are included in the area of the 43 acres. I could explain better on the blackboard.

"*     *     *     *     *     *     *     *

"The truth is that all this I have leased and all this boundary has always been considered as stated, 43 acres.

"Judge: Have you surveyed it?

"A. Absolutely not, but the parcels are not known as A or B but rather that piece of land owned by Candelario Quiñones is known by everyone as consisting of that acreage."

There is no doubt as to the existence of these two parcels of land which must be attached and executed separately, without confusing one with the other; but even if only one parcel of 43 acres were involved, if the value of the property of Candelario Quiñones, as of the date on which the debt was acknowledged, has not been shown, it is clear, in our judgment, that the action cannot prosper.

The plaintiff alleges that the situation which must be considered in this case is not that prevailing in 1928 when the obligation of the defendant to González arose, nor that of the

year 1929 in which the simulated acknowledgment took place, but rather the situation prevailing in the years 1930 and 1931 when the legal actions of the alleged creditors were started and when González had knowledge of them and was able to make use of his right to file his complaint against Quiñones. The plaintiff contends that on this date Candelario Quiñones owned only two parcels of land leased to his creditor González, and that the half-acre of land with a house mentioned in the opinion of this court, on the basis of the testimony of Juan B. Quiñones Asencio, had been sold to the plaintiff González himself, as the same witness, Juan B. Quiñones Asencio; testified when replying to the questions of the attorney for the defendants. The plaintiff calls attention to a part of the testimony of this witness which we transcribe although at greater length:

"Q. What is this document which I am showing you?

"A. That was a promissory note.

"Q. Signed by whom?

"A. Which was made....

"Q. Signed by whom?

"A. By Dr. Luis Felipe González.

"Q. The same plaintiff who is here?·

"A. Yes, sir.

"Q. For what amount?

"A. It was for the sum of $100, but the note is only for $90 because they said that he had paid $10 to Mr. Luis Sánchez Vahamonde for some deeds and then they told me that there was $90 left.

"Q. And that deed for which he paid $10, which one is it?

"A. It is a deed which was executed by Candelario Quiñones in favor of the boys to cover a debt.

"Q. Is that the one in which the debt is acknowledged?

"A. Yes; sir, and that promissory note is for half an acre (cuerda) of land and some lumber and galvanized iron from a house which had collapsed.

"Q. Then he knew that such other property existed?

"A. Oh, of course. He purchased that half-acre and the lumber and galvanized iron.

"Defendant: I offer this document in evidence.

"Witness: The transaction took place in the very office of Mr. Luis Sánchez Vahamonde.

"Judge: What is the deed?

"—The deed that was executed in favor of Remedios López.

"—When was it executed?

"—In '29.

"—What is the date of that promissory note?

"Plaintiff: January 4, 1929, and the deed is dated May 4 and furthermore it has nothing to do with that as this appears to be the proceeds of half an acre of land, lumber, and galvanized iron which is not involved in this suit.

"Q. Explain the matter of the $10 which you say was paid for a deed.

"A. They owed $10 to Luis Sánchez Vahamonde for the deed in favor of the boys and when I went for this promissory note they made out the note and told me that they had paid Luis Sánchez Vahamonde for that deed; that is of January 4, 1929.

"Q. And the deed is dated May 4, 1929?

"A. But as this promissory note was made later, he made it and they dated it that way. That deed may be dated May 4, but the note was made later.

"Q. Later or before?

"A. It was made later.

"Q. Even though it bears an earlier date?

"A. Yes, sir, the Doctor knows it perfectly well; he knows that the sale was for $100.

"Q. Then you maintain that it was so given to you after the deed, even though antedated?

"A. Yes, sir.

"Defendant: Then we offer it in evidence.

"Judge: And the court rejects it.

"Defendant: Exception."

The testimony of Juan B. Quiñones Asencio, son of Candelario Quiñones, shows that Dr. González purchased the property which we mentioned in our opinion; but it also shows that in the year 1929, Dr. González signed a promissory note for $100 in favor of Candelario Quiñones. And it is strange that González who, according to his allegations, was a creditor of the said Candelario Quiñones at that time,

should issue a promissory note for $100 in favor of his debtor to pay for the land and the lumber which he purchased from him.

In our opinion we stated that there was no evidence to show the value of the land alleged to have been the only property owned by Candelario Quiñones and that adding the alleged credit of Dr. González on July 14, 1928, to the obligation confessed to be due the nephews of Candelario Quiñones on May 4, 1929, the total is approximately $2,800. This sum is rather high, as we made the mistake of including the interest on the allegedly simulated debt to October 1929, when it should have been only to May 4, 1929, the date on which the debt was acknowledged. This is the date which must be considered and not December 1930, as the plaintiff contends. But even if the plaintiff's estimates up to December 1930 could be accepted, and even if Candelario Quiñones owed the full amount claimed by Dr. González, and not the amount due at the time of the alleged simulation, and also the full claim of the López Quiñones brothers, if the value of the property of the debtor has not been shown, the action in his case cannot prosper.

The plaintiff contends that we can ascertain the value of the farms from the rental fixed for the two parcels. The lease contract fixed ''a rental of $46 every three months, payable in advance, the taxes already levied, and those which may be levied in the future on the leased parcels to be for the account of Mr. González.'' The plaintiff, in his brief, and on the basis of the rental, estimates the value of the farms at about $2,000. We cannot appraise these farms on such a basis. The plaintiff admits that neither of the parties has presented direct evidence dealing with the value of the farms, but he says that the court has sufficient data for deducing it and cites the rental and a sort of account which is called an apocryphal liquidation, presented by the defendants themselves. The plaintiff says: ''If the court examines that apocryphal liquidation presented by the defendants them-

selves it will see that at the end of the first folio the value of the farm is fixed at $345 and later, in folio 2, the parcels acquired on different dates are seemingly specified, totalling 53¾ acres, valued at $109, which would give an average of $2 per acre.'' Although the position of the plaintiff is somewhat convenient, discarding the so-called liquidation as apocryphal and utilizing it in so far as it is favorable to him, we cannot understand how he has been able to reach the conclusion that the value of the parcel or parcels belonging to Candelario Quiñones has been fixed in that so-called liquidation. In this document, which is undated and which is not easily understood, an item of $345 appears followed by these words: ''Value of the parcel.''

No one who reads the said document can identify the parcel which appears valued at $345. The item which mentions it appears among assets under the following heading: ''Assets of Ensa''. And it certainly cannot be said that this parcel is related to the two parcels of land belonging to Candelario Quiñones. Moreover, even if the document were authentic and it dealt with the same farm, the date of the appraisal could not be fixed, because the said document bears no date. The plaintiff himself, in his brief, estimates the value of the farms at approximately $2,000. We may properly note at this time that Dr. González, who says that this is the only property of Candelario Quiñones and values it at $2,000, appears charging him $2,485 for professional services and in addition lending him $502.78 in 1930.

As we have already said, there is no evidence in the record in respect to the value of the property owned by Candelario Quiñones on May 4, 1929, when the acknowledgment of debt was made in favor of the López Quiñones brothers. The plaintiff says that there is no direct evidence, and we add that neither directly nor indirectly does the record show the most remote evidence of the value of the said property on the said date.

The plaintiff in his brief clearly states that the purpose of the action brought is to impeach the acts which the debtor Candelario Quiñones has committed in fraud of the right of his creditor, and that the legal basis of the action is section 1064 of the Civil Code, 1930 ed., equivalent to section 1078 of the Revised Civil Code and to section 1111 of the Spanish Civil Code, which reads as follows:

"Creditors, after having attached the property of which the debtor may be in possession, in order to collect all that is due them, may exercise all the rights and actions of the latter for the same purpose, excepting those inherent in his person; they may also impugn the acts which the debtor may have performed in fraud of their right."

In commenting on this section Manresa says that its second part, which declares the right of creditors to impeach the fraudulent acts of their debtors, is also a provision which, because of its generality and importance, is frequently subordinated to several others which complete and limit it, citing among them that of the rescission of contracts. The learned commentator, in referring to the same section, says:

"Lastly. the decision of June 25, 1927, is of interest; it was established therein that section 1111 requires the previous attachment of the property of the debtor as a necessary condition for impugning the acts which said debtor may have done in fraud of creditors as its text clearly states, for which reason the right of the creditor is rather expectant and supplemental, and has no legal existence unless the lack of property owned by the debtor from which the creditor might recover is shown. . . . ." 8 Manresa, 110.

The right of the creditor, as Manresa says, is rather expectant and supplemental, and if the lack of property owned by the debtor to cover the claim of Dr. González has not been shown, certainly a decision in his favor cannot be rendered.

The plaintiff says that we have avoided making any concrete statement in our opinion as to the simulation of the acknowledgment of debt.

The last paragraph of the original opinion delivered by us is as follows:

"This is·a case in which both parties, plaintiff and defendant, accuse one another of having combined with Candelario Quiñones to prejudice the rights of the other. The evidence presented is not as clear as might be desired. Certain evidence which was offered but not admitted, might have thrown light on the questions in controversy. The acknowledgment of debt may have been simulated and there are indications that it was. The claim of Dr. González is not free from suspicion either. The conduct of Candelario Quiñones in either case cannot inspire confidence. But, as we have already said, even though the credit of the plaintiff were legitimate, it is not possible to render judgment in his favor, because he has not shown that he was prejudiced by the acknowledgment of debt made in favor of the nephews of Candelario Quiñones on May 4, 1929."

We confirm our conclusions. We had no necessity for making a concrete statement as to the alleged simulation, inasmuch as the plaintiff did not prove that Candelario Quiñones lacked assets to cover his claim. However, we said that the acknowledgment of debt may have been simulated and there are indications that it was. The plaintiff understands that there is strong evidence in the record to support the conclusion that all of the debt acknowledged constitutes a simulation. Our words were based on the contents of the deed executed on May 4, 1929, in which the following statements are made:

"FIRST: The party of the first part Mr. Quiñones states that, as a consequence of the death of Pedro López and of his wife, Faustina Jovita Quiñones, father and mother of the other parties, he received for these two brothers the sum of ONE HUNDRED DOLLARS as well as a calf which belonged to the other party, Francisco López, and he also received EIGHTY DOLLARS, which was the proceeds of a house which he sold and which belonged to the said brothers, parties of the second part, by way of inheritance from their said deceased parents.

"SECOND: That the party of the first part, Mr. Quiñones, likewise acknowledges that, by way of inheritance from their grandmother, Lorenza Quiñones, there was due to the said two brothers,

parties of the second part, the sum of ONE HUNDRED EIGHTY DOLLARS, which was the proceeds of a house sold to the Messrs. Matta, and a calf, the house having been sold for ONE HUNDRED FIFTY DOLLARS and the calf for THIRTY DOLLARS.

"THIRD: That as a consequence of the fact that the said brothers, parties of the second part, were then minors, the party of the first part Mr. Quiñones could not pay the said sums to them, and for this reason he is indebted to them for the same, having appropriated the same and having invested the said sums, amounting to THREE HUNDRED EIGHTY-THREE DOLLARS and forty cents, for his own benefit.

"FOURTH: And since the said two brothers, parties of the second part, demand from him now an acknowledgment of the said debt, and in addition, that he pay them interest on the said THREE HUNDRED EIGHTY-THREE DOLLARS and forty cents, in accordance with what has been agreed, the parties COVENANT:

"A. Candelario Quiñones, party of the first part, declares that he is indebted to his two nephews parties of the second part, named Francisco and Remedios López Quiñones, in the sum of THREE HUNDRED EIGHTY-THREE DOLLARS and forty cents, which is the proceeds of the two inheritances referred to in the foregoing clauses, which sum he obligates himself to pay whenever his said nephews should require him to do so, with interest at the rate of 1 per cent monthly, from the month of July 1894."

According to the part of the deed which we have copied, the property described in the same was left by Pedro López who died in 1889, and by Jovita Quiñones and Lorenza Quiñones who died in 1912. This is where a sign of simulation appears, at least as to the interest, because there is no explanation of why Candelario Quiñones agreed to pay interest from 1894 when part of the property, said to have been inherited by the López Quiñones brothers, was left by Lorenza Quiñones who died in 1912. The same may be said in regard to the property of Jovita Quiñones who also died in 1912.

Francisco López Quiñones was born in June, 1883. Dionisio Remedios López Quiñones was born on October 9, 1886. So that both were of age when Jovita and Lorenza Quiñones

died. Candelario Quiñones in the deed stated that he could not deliver the property to the brothers then because they were minors. When we said that the acknowledgment of debt may have been simulated and that there are indications that it was, we based ourselves on the statements made by Candelario Quiñones himself in the said document. We do not attach as much importance as the plaintiff does to the fact that, in mentioning the sums received, the word "dollars" and not "*pesos*" is used, because ever since the change of sovereignty, and in spite of the time which has passed, there have been and still are, persons who become confused, speaking indiscriminately of dollars and *pesos,* as if both words had the same meaning.

The plaintiff lays stress on the answer of Candelario Quiñones to the complaints filed against him by his nephews, stating that inasmuch as he had reached an advanced age and had been deserted many years ago by his wife, Hermógenes Asencio, and for the purpose of punishing her for her inconsiderate conduct toward him, he made an agreement with his two nephews, at their instance, to simulate, as they did, a debt, in order that the two nephews could, at his death, attach his property to cover the debt thus acknowledged.

We have said that these statements, made in other actions brought by the López Quiñones brothers against their uncle Candelario, cannot constitute evidence against the two nephews, defendants in this case. Candelario Quiñones had the opportunity of appearing at the trial of the action brought against him by Francisco López and he did not do so. He withdrew from the trial, alleging that he did not have his evidence in court at the time. Candelario knew, since February 25, that the hearing had been set for March 10, and he withdrew from the court, through his attorney, when the continuance of the trial which he had requested was denied, despite the fact that he had personal knowledge, since it was he who had acknowledged the debt, of the facts alleged in his

answer, and although his testimony was of exceptional importance.

As to the alleged simulation in fraud of creditors, the plaintiff argues that the acknowledgment of debt was simulated for the manifest purpose of punishing or prejudicing the wife of Candelario Quiñones, defrauding her of her rights as such wife, and that the said Candelario Quiñones openly so stated. The plaintiff seeks to have us accept and accredit the verified answer of Candelario Quiñones in the actions brought against him by his nephews, that is to say, that we consider as proved the fact that the said Candelario Quiñones was deserted by his wife, that her conduct toward him was inconsiderate, that she revoked his power of attorney, and that he simulated the debt with the intention of punishing her for her conduct, all of this without the defendants having had an opportunity to exercise the right to cross-examine. The wife of Candelario Quiñones was not his creditor, but the co-owner of the property acquired by the conjugal partnership, and in case the simulation was made for the purpose of prejudicing her, she would have a clear right to establish the proper claim, not as a creditor, but as owner of one-half of the property acquired during the matrimony.

The plaintiff, who bases his action on section 1064 of the Civil Code, equivalent to section 1111 of the Spanish Civil Code, cannot attack the acknowledgment of debt as fraudulent while he can find other means to recover, and as it has not been proved that these means are lacking, and all of the property of Candelario Quiñones has not been attached, he has no right to a decision in his favor.

In referring to contracts in fraud of creditors, Manresa says:

"The judgment of September 24, 1906, has furnished a general concept of contracts made in fraud of creditors, saying that they are such as are made with the intent to prejudice the said creditors in their rights, and that it is not proper or just to confuse them

with those which are made without such intent, even though, as a consequence of the same, a certain prejudice may be caused to a creditor, and that the existence of such intent should be determined either from the presumptions established by law, or from the evidence presented at the trial." 8 Manresa, 667.

And further on the same commentator says:

"After what has just been said, we arrive at the conclusion that the first requisite is the existence of a credit: an existence which must precede the contract, even though the maturity of the former may be subsequent to the date of the latter, inasmuch as insolvency might be prepared in anticipation of such maturity. The date of the credit and its priority with respect to that of the contract must be proved, according to the ordinary principles, by the one who brings the rescissory action.

"The next requisites needed are fraud, which supposes the intent to prejudice the creditor, and the reality of the prejudice. Fraud is presumed either by law (section 1297 and germane provisions), or by convincing evidence thereof. But the intent to defraud is not sufficient, because if, in spite of that, the creditor finds means to recover, he cannot attack the contracts as fraudulent, because the scope of his right goes no further than the satisfaction of his interest." 8 Manresa, 668.

As to the alleged punishment which Candelario Quiñones wished to impose on his wife, it is well to make clear that in so punishing her he also punished his sons, since, if the debt was simulated, he was depriving them of a part of their inheritance. And it so happens that the wife and the sons thus punished, appeared in the lower court to acknowledge the existence of the credit claimed by the López Quiñones brothers. And it is significant that Candelario should take the trouble to elaborate a simulation to punish his wife, when he could have attained his purpose by taking as a basis the sum which, according to his own confession in 1931, he owed to Dr. González on May 4, 1929. There is no doubt that it would have been easier for him to acknowledge a legitimate debt, obligating the conjugal partnership, than to have recourse to a simulation.

The defendants presented three documents in evidence, which were examined by the handwriting expert, Pedro C. Timothée, a witness for the plaintiff. The expert examined exhibits 7, 8, and 9, and reached the conclusion that the differences in the first two signatures as compared with an established signature are so many that he does not believe that they were written by the same hand. In respect to exhibit 9, the expert states that the termination of the letter *d* differs from the *d* in the authentic signature, but the other conditions being the same, this difference is not sufficient to establish that the signatures were made by different hands. Referring to these documents, the lower court expressed itself as follows:

"Another aspect of this evidence which we wish to consider, because it is interesting in itself, is furnished by certain documents apparently signed by Candelario Quiñones, on which expert testimony was presented. (Exhibits 7, 8 and 9.) The witness compared these documents with the authentic signatures affixed by Candelario Quiñones to the answers in the actions to which we have referred, which answers are verified. A study of those signatures, made by this judge, leads him to the logical conclusion that the signatures appearing in exhibit No. 9 do not have the same or similar characteristics as those appearing in exhibits 7 and 8, comparing them with those which appear in the sworn statements; but exhibits 7 and 8 do not have the importance that the defendants attribute to them, and they are also prior (at least exhibit 8 is dated January 19, 1929) to the acknowledgment of debt made in the deed. In these documents there is no express confession of the debt and they are in the same position as the deed of acknowledgment which is fully and amply impeached by Candelario Quiñones, according to his sworn answers to the complaints filed by his nephews."

The words of the lower court do not appear to agree with the testimony of the expert. With respect to exhibit No. 9, the expert only finds a certain difference between the letter *d* of the doubtful signature and the same letter of the authentic signature. The trial court notes that the signatures which appear in the said document do not have the same or

similar characteristics as those which appear in exhibits 7 and 8, comparing them to those which appear in the authentic documents. So that in the signature of exhibits 7 and 8 where the expert finds so many differences, comparing them to the authentic signatures, the court observes the same or similar characteristics, in making the same comparison.

We have not seen the original documents because they have not been sent up to this court. We have read the copies in the record and really their study has not given us the impression that they are false. We respect, however, what was said by the expert who examined the documents and we believe with the lower court, that the said documents do not have the importance attributed to them. We will not transcribe these documents because they are drafted in language which is very difficult to understand and because we do not wish to make this opinion, which is already quite long, any longer. The documents are in the record and speak for themselves. We have seen them and examined them carefully and in our opinion they cannot leave any other impression with an impartial observer than the one stated here.

We will now discuss the fundamental question, which deals with the rescission or nullity of a contract. If we are not mistaken, the plaintiff requests the nullity of the acknowledgment of debt on the basis of section 1064 of the Civil Code, and in addition to this section he relies on and cites other sections dealing with the rescissory action.

The plaintiff in his brief says that the object of the action brought is to impugn the acts that Candelario Quiñones has performed in fraud of his rights, and that said action is based on and is expressly authorized by section 1064 of the Civil Code which is twice copied in the said brief. He then states that this section is related to and in concordance with sections 1243, subdivision 3, and section 1249 of the said code, which are equivalent to sections 1291 and 1297 of the Spanish

Civil Code, respectively. The sections copied by the plaintiff in his brief, in so far as now pertinent, read as follows:

"Section 1243.—The following may be rescinded:

"*    *    *    *    *    *    *

"3. Those executed in fraud of creditors, when the latter can not recover, in any other manner, what is due them.

"Section 1249.—Contracts by virtue of which the debtor alienates property, for a good consideration, are presumed to be executed in fraud of creditors."

The plaintiff argues that, according to section 1064 and to subdivision 3 of section 1243, "it is necessary to allege and prove that the creditor has attached the property of the debtor and that he cannot recover what is due him in any other manner."

On the last page of the brief the plaintiff says that "the principal and fundamental cause of action alleged in his complaint is the action for nullity of a contract and of the judgments based on the same, such action being the one authorized by sections 1252 and 1254 of our Civil Code."

As may be seen, the plaintiff requests the nullity of the acknowledgment of the debt and of the judgments entered in favor of the defendants, but relies on section 1064 and subdivision 3 of section 1243 of the Civil Code which deal with the rescissory action. He states that the legal basis of his action is the said section 1064 and also states that the complaint is one for nullity, which action is authorized by sections 1252 and 1254 of the Civil Code, dealing with the nullity of contracts, and may be brought by those who are principally and secondarily bound by a contract. In a supplemental brief, the plaintiff points out that "applying, by analogy, the doctrine laid down by the court in the case of *Cabassa* v. *Nadal*, 23 P.R.R. 691, in which it was held that 'an action for nullity of marriage and an action for divorce are not incompatible . . . Both actions arise from the same act . . . and have the same object . . . ' it can be argued that

in this case the nullity action brought is not incompatible with the rescissory action."

From all these arguments we conclude that the plaintiff has brought an action for nullity based on section 1064 of the Civil Code. In our judgment, the action that the creditor may bring, pursuant to this section, to impugn the acts that the debtor may have performed in fraud of the creditor's right, is of a rescissory nature. It is so stated by Scaevola and Manresa. The former in his Commentaries on the Civil Code, volume 20, page 978, expresses himself as follows:

"Lastly, the creditors may also bring an action for nullity, as one of the many rights of their debtor, making use of the powers granted to them by section 1111 of the Code: it has so been held by the Supreme Court, incidentally, in its judgment of November 11, 1895. Our opinion, however, is different. Section 1111 of the Code indeed authorizes the creditor to exercise all the rights and actions that the debtor may have, excepting those which are inherent in his person, for the exclusive purpose of recovering what is due him; but these actions must be directed, either against creditors of the debtor or against third parties, for fraudulent conveyances, it being evident that the actions against the latter are of a rescissory nature and not nullity actions."

Manresa, commenting on subdivision 3 of section 1291 of the Spanish Civil Code, which is equivalent to section 1243 of our Code says:

"Of all the provisions of this section, none perhaps is so general as that contained in subdivision 3, and for this reason, although it is undoubtedly the most interesting and complicated hypothesis among those enumerated, we will explain it when commenting upon the following sections, that is sections 1294, 1295, and 1297.

"Here, in addition to pointing out the foundation which this subdivision finds in section 1111, we must draw two conclusions, both important, based on the very generality of the provision which is developed in section 1297. One is that, inasmuch as the patrimony of the debtor includes property and rights, and fraud may be perpetrated also with respect to the latter, the acts whereby a credit is waived, for example, a condonation, may be rescinded, in principle. The other conclusion is that the admission of particular

presumptions with respect to fraud, different from those enumerated in section 1297, is based in the very generality of the provision, for, as is said in the judgment of October 25, 1895, simulated and fraudulent contracts may be rescinded in accordance with subdivision 3 of section 1291 of the Civil Code and the judgment having so decided, the fact that sections 40 of the Mortgage Law and 1297 of the Code were erroneously applied is immaterial, for these sections only contain presumptions with respect to fraud, by means of which the same result is reached." 8 Manresa, 667.

The same commentator, referring to section 1297, which is equivalent to section 1249 of our Civil Code, states:

"With respect to this point, we need only say that, just as donations of property may be rescinded, so also may the condonations made by a debtor to his debtors be rescinded. This is so either because of the analogy, legally established, between a condonation and a donation, or because the term property includes for this purpose all rights of the debtor, except those inherent in his person, or because section 1111 which regulates this subject, indiscriminately includes things and credits.

"The most frequent instance of conveyances in fraud of creditors is not that of donations where it is expressed that they are made gratuitously, but that of conveyances, whether simulated or real, but made gratuitously usually to the prospective heirs of the debtor, and disguised as conveyances for valuable consideration. The provision applicable to such cases is not really the second paragraph of this section with consideration, but the provision contained in the first paragraph, once the simulation has been proved, which the creditor who brings the rescissory action must do. That this is the most frequent case is revealed by the fact that almost all litigation in this respect deals with simulated contracts and the application of the first paragraph of this section is unavoidable, either because reality once known overcomes fiction or because the presumption of fraud is strengthened by the showing of the simulation, or because, where there is a simulation, the purchaser reveals his complicity and is unable to invoke the protection of the Mortgage Law. The result is that in such cases the creditor has difficulty in proving his case, and once this difficulty is overcome the application of the provisions of law and the enforcement of the right of the creditor are imperative." 8 Manresa, 685.

According to the commentators cited, a creditor who wishes to impugn the acts performed in fraud of his right, relying on the provisions of section 1111 of the Spanish Civil Code, equivalent to section 1064 of our Code, 1930 edition, must resort to the rescissory action. The plaintiff seems to contend that he may resort to an action for nullity by interpreting the said section in harmony with section 1254 of the Civil Code, 1930 edition, which provides that anyone principally or secondarily bound by a contract may resort to an action for the nullity of the same. The commentators and the Supreme Court of Spain are not in complete agreement with respect to the persons who may resort to this action. Scaevola compares the judgment of September 23, 1895, which recognizes the right of a third party to ask for the nullity of contracts which prejudice him, with the decision of April 18, 1901, which holds that only the contracting parties, their representatives or successors may impugn the validity of the contract, and he says that the latter follows the Code more closely since it limits the prosecution of the action to the same persons that are bound by the contract. He argues, however, that despite the literal meaning of the Code, the former judgment is sound in general, and proposes, in order to harmonize the two theories, the following solution:

"To sustain absolutely the limitation contained in section 1302, confining the right to those who are bound by the contract would lead to serious injustices through possible and simple confabulations; and even if this were not so, even if it were considered that all or a great many cases of such injustice, as was the case in the judgment of September 23, 1895, could be more properly remedied by rescission based on fraud on creditors than by a nullity action, as we pointed out in our book 'Jurisprudencia del Código Civil,' such a limitation would always lead to the possibility that a third party, who is denied the right to protest, may be prejudiced by the consequences, for example, of an immoral contract. This makes it necessary to place third parties in a position to exercise the action, as is acknowledged in the said judgment; but it must also be borne in mind that the right of such third parties cannot go so far as

to encroach upon the right that contracting parties have to ratify and make valid, in certain cases, their invalid acts.

"It is enough to apply the conclusions we have just reached in the preceding commentary in order to decide in a clear and fair manner such an apparently serious difficulty. There are contracts as we have said, which, although they do not affect the public interest, are held to be void, due to the position of the contracting parties; and in which the prejudiced party, therefore, may either allow the term for bringing the nullity action to elapse without seeking to annul it, or may expressly ratify it. Such contracts, which we have classified as voidable and which may be validated, may not be impugned by third parties without doing violence to the most important elements of the action for nullity. But in those other contracts that are against public policy, in which the ground for nullity is permanent, definite and cannot be remedied, in which the law cannot sanction the legal existence of the agreement or its consequences, who doubts that an interested third party can impugn such a contract when its subsistence is prejudicial to him? Once again then, everything is reduced to whether the nullity is decreed for reasons of public interest or whether it depends on the interest of the contracting party; in the latter case, which is the only one that the legislator had in mind generally when dealing with nullity, the action is not available except to persons bound on the contract, according to section 1302; in the former, any interested party, even though a stranger to the contract, may request and obtain the declaration of nullity." Scaevola, *Comentarios al Código Civil*, volume 20, page 976.

## Manresa expresses his opinion in the following manner:

"In the judgment of April 18, 1901, the court held, in accordance with the rule formulated here, that 'one who is not a party to a contract, and has neither the cause nor the representation of the parties thereto, lacks a right of action and capacity to impugn the validity of the contract, as is evident from the provisions of sections 1257 and 1302 of the Civil Code.'

"*         *         *         *         *         *         *

"The most interesting problem on this point is whether or not an action for nullity may be brought by one who, without being obligated in any way, is prejudiced in his rights in respect to one of the contracting parties, if efficacy is attributed to the void contract made by the latter. On this point, which consists strictly of

ascertaining whether this section has a restrictive character or, on the contrary, permits those prejudiced by the contract to bring the action in question, and whether, as a consequence, the defeated creditors have as a means of defense, in addition to the rescissory action, the action for nullity, the latter proposition seems to be maintained in the judgment of September 23, 1895, in which a legatee is allowed to defend his legacy in an action of nullity of simulated contracts executed by an heir, formerly the attorney-in-fact of the testator, and wherein it was held that 'section 1302, in establishing that the action for nullity of a contract may be brought by those primarily or secondarily liable on the contract, does not exclude the right of third persons prejudiced by the obligation to bring it; a remedy which therefore must logically be extended to one who is defrauded in his right as legatee by credits which he considers and which prove to be simulated.'

"Many other decisions (and among them those of July 8, and October 12, 1916, October 8, 1919, November 12, 1920, May 30, 1925, and November 20, 1926), likewise hold that even though this section 1302 does not establish the right of third parties to bring the action of nullity of contract, neither does it deny said right, wherefore, not only are those who are principally or secondarily obligated on such contracts authorized to bring said action, but also third parties who may be prejudiced by the obligation.

"But other judgments, such as those of December 18, 1901 and November 23, 1903, hold, on the contrary, in a very definite manner, that only persons obligated principally or secondarily by virtue of a contract may bring the action of nullity.

"We are of the opinion that this is the only interpretation that may be properly derived from section 1302. Third persons do not need the action of nullity to which the section refers. The contract either prejudices them or it does not. If it prejudices them, whether the contract or act is valid or void they can bring a rescissory action. If it does not prejudice them, whether it be valid or void, they can have no interest in the matter." 8 Manresa, 707.

Thus speak the two learned commentators. Manresa, despite the latest decisions of the Supreme Court of Spain holding that, although the code does not establish the right of a third party to bring the action for nullity of contract, nei-

ther does it deny it, maintains that only persons who are obligated principally or secondarily by virtue of a contract may bring the said action for nullity. This opinion seems to be the one which is best adapted to the letter of the code. Scaevola himself, who admits this, proposes for the purpose of conciliating the two theories, that a third person be permitted to bring the action for nullity when it lies for reasons of public interest, and that only persons obligated be permitted to bring the action, according to the provisions of section 1302 of the Spanish Civil Code, where the nullity depends on the private interest of the contracting party. Section 1294 of our Civil Code specifies the persons who have the right to bring the action for nullity. Does this express provision of the code exclude persons who are not obligated principally or secondarily on the contract? This is a question which we do not decide in this case because it is not necessary. Whether a rescissory action or an action for nullity is involved, it is necessary that the plaintiff show his interest in order to establish his right. Such interest arises from prejudice. For the exercise of either of these actions it is necessary that prejudice be suffered. Whether the contract is invalid or not, if it does not prejudice the creditor, a right of action cannot exist. In this case the value of the assets of Candelario Quiñones, either now or when the acknowledgment of debt was made, has not been proved, nor has all his property been attached. If we do not know the value of the said assets, how can we determine whether or not the plaintiff has been prejudiced? If the creditor does not show that he has no means for recovering, it cannot be said that there is prejudice. His rights cannot extend beyond his interest. The reality of the prejudice, as Manresa so aptly says, is determined by the impossibility of payment.

The motion for rehearing is denied.

Mr. Justice Wolf concurs in the result.